No. 21921.

Robert K. Weck, et al. v. District Court of the Second Judicial District, et al.

(408 P.2d 987)

Decided December 13, 1965. Rehearing denied January 10, 1966.

GORSUCH, KIRGIS, CAMPBELL, WALKER and GROVER, JAMES H. TURNER, for petitioners.

HASKELL, HELMICK, CARPENTER & EVANS, JOHN R. EVANS, BRADFORD WELLS, for respondents.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

This is an original proceeding commenced in this court by the above named petitioners who sought the issuance of a rule, directed to the respondents, to show cause why the prayer of their petition should not be granted. Upon consideration of the allegations set forth in the petition this court issued the rule; the respondents have filed their "Answer"; and the question presented for our determination is whether the rule should now be discharged.

The controversy grows out of certain procedures which took place in an action pending in the district court of the City and County of Denver, in which the petitioners here were the plaintiffs, and John H. Lowell, Thomas H. Murphy, Bruce Kistler, Peat, Marwick, Mitchell & Co., a partnership, and John C. Eigeman were the defendants.

The record indictes that the petitioners were stockholders in a corporation to which we will refer as Synkoloid. Involved in the district court action is a corporation known as The Clute Corporation, and the defendants Lowell, Murphy and Kistler were directors thereof. It was alleged in the complaint in the district court action that the defendant Lowell proposed to Weck that a merger of Synkoloid with Clute would be of mutual benefit to the stockholders of both companies; that Weck on behalf of himself and all other stockholders of Synkoloid negotiated with the three defendants who were directors of Clute concerning the terms of the proposed merger; that the defendant directors of Clute made false and fraudulent representations concerning the financial condition of the company, which were relied upon in bringing about the merger, all to the damage of plaintiffs in the sum of $1,500,000. It was further alleged that the partnership of Peat, Marwick, Mitchell Co. and

John E. Eigeman, as accountants, had prepared false and misleading financial statements which were known by all the defendants to be false; that these statements were prepared in a wanton and reckless manner with utter disregard of the rights of the plaintiffs; and that a conspiracy had been entered into by all the defendants to cheat, wrong and defraud the stockholders of Synkoloid. One of the results of the merger of the two companies was that plaintiffs became stockholders of Clute. The plaintiffs in that action served upon the partnership a notice for the production of documents in its possession belonging to Clute, which were used in preparation of the financial statements above mentioned.

At the hearing on this motion the defendant John C. Eigeman, one of the partners, filed his affidavit in which it was asserted that the documents were privileged under the provisions of C.R.S. 1963, 154-1-7(7), which provides that:

"A certified public accountant shall not be examined without the consent of his client as to any communication made by the client, to him in person or through the media of books of account and financial records, or his advice, reports or working papers given or made thereon in the course of professional employment nor shall a secretary, stenographer, clerk or assistant of a certified public accountant be examined without the consent of the client concerned concerning any fact, the knowledge of which he has acquired in such capacity."

The judge thereupon entered an order requiring production of the documents which were sought by the motion of the plaintiffs, conditioned, however, upon obtaining consent from The Clute Corporation. Meanwhile, that corporation was undergoing reorganization proceedings under Chapter X of the Bankruptcy Act in the United States District Court, which had appointed a trustee of the corporate property. No waiver of the privilege of the statute was obtained.

Plaintiffs then sought to take the deposition of the

defendant Eigeman and one Harry T. Lewis, Jr. They refused to answer certain questions on the ground that they were Certified Public Accountants working for the defendant partnership, and that the information called for by the questions was privileged and in the absence of consent from Clute they could not lawfully be compelled to answer. In major part, the position of the accountants was sustained by the trial court. The plaintiffs then filed the petition in this court, with a brief in support thereof, and, as already stated, the rule to show cause issued.

It is argued by counsel for petitioners that:

"1. The accountant-client privilege (C.R.S. 1963 154-1-7(7) does not apply to an accountant's work papers, reports, and financial statements, nor to communications between the accountants and their client and between each of them and third persons, which result in financial statements and an audit report thereon to bar their disclosure to shareholders of the corporation in an action by the shareholders against former officers and directors of the corporation and against the accountants, which action is based upon negligence, gross negligence, fraud and conspiracy in the preparation and audit of the corporation's financial statements.

"2. The accountant-client privilege (assuming arguendo that it applies in these circumstances) with respect to The Clute Corporation's financial statements and auditors' report thereon and to all subsidiary documents in the accountants' possession such as their work papers, reports and other documents and to communications between the accountants and their client and between each of them and third persons, was waived by The Clute Corporation when it delivered to the public, to its shareholders and to the plaintiffs its financial statements and auditors' opinion thereon.

"3. The Clute Corporation and its trustee are estopped to assert the accountant-client privilege under the circumstances presented here."

The statute upon which the respondents rely was enacted in 1929 and has been considered by this court in only one case (*Hopkins v. People*, 89 Colo. 296, 1 P.2d 937); however, the matter decided in that case has no relevance to the instant action. Seven separate classifications of persons are included under the terms of the full statute and in each classification it is provided that such persons "shall not be examined" as a witness. The first paragraph of C.R.S. 1963, 154-1-7 includes the following:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; * * *"

Express directions concerning the manner in which the protection of the statute shall be waived are contained in C.R.S. 1963, 154-1-8 as follows:

"OFFER TAKEN AS CONSENT. If a person offer himself as a witness, that is to be deemed a consent to the examination; also the offer of a wife, husband, attorney, clergyman, physician, surgeon or certified public accountant as a witness, shall be deemed a consent to the examination, within the meaning of subsections (2), (3), (4), (5) and (7) of section 154-1-7."

It does not lie within the power of a stockholder, or a minority of stockholders, or a majority of the stockholders to function in such manner as to bring about this statutory waiver. The discretion to waive the protection afforded by the statute can only be exercised by the governing officials of the corporation, namely, the officers or the board of directors. C.R.S. 1963, 31-5-1, provides in pertinent part that,

"The business and affairs of a corporation shall be managed by a board of directors which shall exercise all the powers of the corporation, * * *."

If in the opinion of one or more stockholders the board of directors of the company refuses to exercise a discretionary power pursuant to the desires of such stock-

holders their remedy is to elect a board of directors who will function according to their wishes.

 This court considered the question of a waiver of personal privileges in the case of *Geer v. Alaniz,* 138 Colo. 177, 331 P.2d 260, where we find, *inter alia,* the following statement:

"The right to trial by jury, the right to counsel, the right not to incriminate one's self, *and related matters* are known as alienable constitutional rights or as rights in the nature of personal privilege for the benefit of the person who may seek their protection. Such rights, whenever assertable, may be waived, \* \* \*" (Emphasis supplied.)

The privileged status of the communications between Clute and its certified public accountant stands in the same position. The privilege created by the statute "for the benefit of the persons who may seek their protection," is equally inviolable whether created by statute or constitutional provision.

"\* \* \* An effective waiver requires voluntary action based upon knowledge of consequences." *Toland v. Strohl,* 147 Colo. 577, 364 P.2d 588.

Consent to the giving of testimony by a certified public accountant could not be given by the corporation until there was pending litigation in which a participant has made a demand for the testimony in question. The party then entitled to invoke the protection of the statute could voluntarily act with full "knowledge of the consequences." With reference to one litigant he might see fit to waive the protection of the statute, and as to another he might elect to claim the benefits thereof.

The brief filed by the petitioners seems to imply that any recovery which might be secured in the district court action would benefit all of the stockholders of The Clute Corporation. This, of course, is not true for the reason that although plaintiffs' action is a class action brought for a special class of persons, the only persons coming within that class are the former stockholders of

528

the Synkoloid Company who have now become stockholders of The Clute Corporation. Stockholders of Clute who had never been stockholders of Synkoloid would derive no benefit whatever from a successful prosecution of plaintiffs' claim.

The fact that C.R.S. 1963, 31-5-17, provides that a corporation shall keep "complete books and records of account and shall keep minutes of the proceedings of its shareholders and board of directors; * * * and shall keep "a record of its shareholders, * * *"; and the further fact that a qualified shareholder shall have the right to examine "its books and records of account, minutes and record of shareholders and make extracts therefrom" does not operate to nullify the provisions of the witness statute above quoted. This statute was adopted in the year 1929 and for many years prior thereto there were statutory provisions authorizing the examination of corporate books and records by stockholders. A history of the cases decided by this court under these different statutes, and a study of the statutory provisions themselves, clearly indicate that the indiscriminate examination by stockholders of corporate records is not favored. See *Dines, et al. v. Harris,* 88 Colo. 22, 291 Pac. 1042, in which the holdings in *Wire v. Fisher,* 66 Colo. 545, 185 Pac. 469, and *Jameson v. Hanawalt,* 67 Colo. 153, 186 Pac. 717, were expressly overruled.

In 1958 significant changes were made in the statute. Prior thereto it provided for examination by stockholders of "all the books, accounts and papers" of a corporation. The amendment of 1958, however, restricted the right of inspection to "complete books and records of account." The confidential relationship existing between the certified public accountants and the corporation came into being by contractual relations between them and the corporation acting through its authorized board of directors. This contractual relation-

ship could not be created in any manner except through the authorized management of the corporation. A waiver of the protection of the witness statute could likewise only be brought about by those duly constituted officers who are charged with the responsibilities of managing the affairs of the corporate entity.

It is admitted in the instant case that the petitioners have been given full access to the "books and records of account" of The Clute Corporation. The complaining stockholders can make their own audit of these books, prepare their own work sheets, and reach their own conclusion therefrom. If upon trial of the issues involved in the case, in order to refute the conclusions of the stockholders' audit, the certified public accountants employed by the corporation are called as witnesses, with the consent of the corporation, then the privilege of immunity from giving testimony would be waived.

There is no merit to the argument of counsel for petitioners that the privilege created by the statute has been waived by The Clute Corporation in that the auditor's financial statements and annual reports prepared and published long prior to the commencement of the district court action were distributed to the public and to the stockholders of the company. It would be an innovation in legal thinking upon the subject of waiver, to hold that a witness had waived his right to claim a privilege by accepting employment by a corporation several years prior to the commencement of an action in which an attempt is made to compel him to testify notwithstanding the privilege created by the statute.

There has been no waiver on the part of The Clute Corporation which is not even made a party to the litigation. The privilege created by the Colorado statute is not the privilege of the accountant but that of the client, and it is clear from the record before us

530

that The Clute Corporation, both by its court appointed trustee in bankruptcy and by the attorney for the corporation, has repeatedly asserted the privilege.

▮▮▮ The argument that The Clute Corporation is "equitably estopped" to assert the privilege is untenable. The argument in this connection seems to be that the defendants in the district court action by words and conduct committed a fraud and led the plaintiffs to act upon the assumption that certain facts were true and that they should not be permitted to deny the truth of those facts if such denial would injure the plaintiffs. This argument is a re-statement of their claim of misrepresentation and is not "equitable estoppel." The plaintiffs in the district court will be heard on their claim of false representations. It cannot now be considered by this court under the misnomer of estoppel.

The rule is discharged.

MR. JUSTICE FRANTZ and MR. JUSTICE McWILLIAMS dissent.

MR. JUSTICE FRANTZ dissenting:

Plaintiffs were shareholders in The Synkoloid Company, which was merged in The Clute Corporation. Lowell, Murphy, and Kistler were and are stockholders and directors of The Clute Corporation. Plaintiffs brought a class action for damages on behalf of "all former shareholders of Synkoloid," naming as defendants Lowell, Murphy, and Kistler and a partnership of accountants, Peat, Marwick, Mitchell & Co., and one of its partners, John C. Eigeman.

Basically the complaint charges fraud and misrepresentation on the part of the named directors in bringing about the merger, and that the partnership of accountants prepared false and misleading financial statements in aid of the perpetration of the fraud.

The plaintiffs filed a motion for the production of

documents under Rule 34, R.C.P. Colo. Omitting the caption, affidavit, and signatures, it reads as follows:

"COME NOW the above named plaintiffs by their attorneys and move the Court for an order requiring the defendants, Peat, Marwick, Mitchell & Co. and John C. Eigeman, to produce and to permit plaintiffs to inspect, copy and photograph any and all of the following items:

"1. All correspondence, telegrams, memoranda and other communications, including written memoranda or other evidence of telephone conversations between Peat, Marwick, Mitchell and Co., its partners and employees and others concerning the Clute Corporation and Mineral Industrial Commodities of America, Inc. (MICA);

"2. All intra-office correspondence, memoranda and other communications between Peat, Marwick, Mitchell & Co. partners, employees and other personnel, including written memoranda or other evidence of telephone conversations concerning The Clute Corporation and Mineral Industrial Commodities of America, Inc. (MICA);

"3. All records, including calendars, appointment books and time sheets maintained by Peat, Marwick, Mitchell & Co. and John C. Eigeman of the nature and extent of their services to Clute, the date such services were performed and the person performing them;

"4. All work papers used in performing audits, preparing financial statements and registration statements and rendering other services for The Clute Corporation and Mineral Industrial Commodities of America, Inc. (MICA); and

"5. All financial statements and opinions rendered thereon, if any, of The Clute Corporation and Mineral Industrial Commodities of America, Inc. (MICA) which are in the possession, custody, or control of the defendants, Peat, Marwick, Mitchell & Co. and John C. Eigeman, or either of them, and as grounds for such motion state that each of the foregoing constitutes or

contains evidence relevant and material to a matter involved in this action, as is more fully shown in Exhibit A hereto attached."

By affidavit the partnership of accountants stated that the material sought by the motion was privileged because of C.R.S. 1963, 154-1-7(7), and that they "cannot produce or otherwise disclose the said documents unless and until its client, The Clute Corporation, has waived the privilege or consented to the production or disclosure." Through its board of directors, The Clute Corporation refuses to consent to disclosure or production. The trial court has sustained the asserted privilege, and the plaintiffs are here by original proceedings. They ask this Court to issue a rule to show cause to the trial court.

C.R.S. 1963, 154-1-7(7) provides:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

\* \* \*

"(7) A certified public accountant shall not be examined without the consent of his client as to any communication made by the client, to him in person or through the media of books of account and financial records, or his advice, reports or working papers given or made thereon in the course of professional employment, nor shall a secretary, stenographer, clerk or assistant of a certified public accountant be examined without the consent of the client concerned concerning any fact, the knowledge of which he has acquired in such capacity."

The statutory rule of privilege is to be kept within its literal bounds. There is no liberal construction in favor of privilege. *Horn v. Hurwitz*, 76 Colo. 389, 231 Pac. 1116. In the cited case Wigmore was thus quoted with approval:

"But no court ought today to lend its sanction to any

expansion of the limits of this undesirable rule of privilege; and there is at least ample authority for the most rigid restriction."

Certain propositions are fundamental and pertain to the problem presented to this Court by the facts of this case. These propositions will be now noted and discussed.

1. Confidence is the seal which sustains the privilege in enumerated relationships. A communication to be conveyed to someone outside the relationship breaks the seal, and privilege then never had existence. There is no confidence where there is a desire to disclose to third persons.

"Communications made to an attorney for the purpose of being conveyed by him to others are stripped of the idea of a confidential disclosure, and, therefore, are not privileged." *Hill v. Hill,* 106 Colo. 492, 107 P.2d 597.

"Only communications which are confidential are protected as privileged as between attorney and client. Those which the attorney in the discharge of his duty to his client is of necessity obliged to make public, or those which are made to him for that purpose, cannot be said to be confidential, and are therefore not privileged." *Green v. Fuller,* 159 Wash. 691, 294 Pac. 1037.

It appears from the pleadings that The Clute Corporation made disclosures to The Synkoloid Company, based upon reports and statements prepared by the accountants, with the purpose of inducing agreement on a merger. To this extent certainly there is no privilege.

2. But there is no privilege once the seal of privilege has been broken. Any disclosure to third persons permits in a proper way that a *complete* disclosure be made.

"As I stated at one of the hearings in this matter, if a person employs an attorney with the understanding that certain information be transmitted to a third party for the purpose of securing a benefit to the client, and the attorney communicates such information, then not

only the specific information, but the more detailed circumstances relating to it may be gone into. The cases already cited are illustrative of the point.

\* \* \*

"Here, the client communicated certain facts to the defendant with the intent that they be conveyed to higher authorities, either as grievances, or as grounds for revision of sentence. The defendant became the 'conduit' for such purposes. And the circumstances under which they were communicated became open to inquiry. After making these charges, in order to serve his client's purposes, the defendant could not attempt to shield him under the plea of privilege by refusing to disclose the circumstances of their communication to him. The secrecy of communications between attorney and client should be held inviolate. But when the client and attorney themselves, for purposes beneficial to the client, lift the veil, they cannot lower it again." *United States v. Shibley,* 112 F.Supp. 734. See *Keohane v. Keohane,* 38 Cal. App. 405, 176 Pac. 386; *Wise v. Haynes,* (Tex. Civ. App.), 103 S.W.2d 477.

Considering the record before us, The Clute Corporation submitted financial statements and other papers for the purpose of inducing The Synkoloid Company to merge into it. Such disclosures lifted the veil of secrecy as to the detail upon which these disclosures were based. One may not set out to inform a party, and then when the party would seek to be wholly informed, invoke the rule of privilege as to that which would verify or disprove the information given.

3. The officers and directors, as agents and trustees for the stockholders, may not assert that a communication is privileged against the stockholders (their principals and beneficiaries) in order that the officers and directors may be protected from a suit against them brought by the stockholders, whether they be a majority or minority thereof.

"The stockholders, not the officers or directors, are

the real owners" of a corporation. The books of a corporation "are not the *private* property of the directors and managers, but are the records of their transactions as trustees for the stockholders." *Dines v. Harris,* 88 Colo. 22, 291 Pac. 1024. In a lawsuit by stockholders to show the accountability of directors and managers for allegedly betraying their trust, the directors and managers cannot assert a privilege regarding the records which will reveal how they carried out their trust.

This case involves a lawsuit. It has gone beyond the stage of the statutory right to inspect the books and accounts of the corporation. Litigation means the right to discover the truth: whether certain directors and officers, aided and abetted by accountants, betrayed their trust as alleged in the complaint. These records, the property of stockholders, will reveal how the directors and officers, as trustees, transacted the business of the corporation for the stockholders.

In the next proposition we carry on an extension of this proposition. If there is doubt (which I do not personally entertain) as to the application of propositions 1 and 2 controlling this case, then it is submitted that propositions 3 and 4 should govern.

4. Papers and documents, originally not exempt from production in the hands of the corporation, do not become privileged by reason of being placed in the possession of an accountant or an attorney. Corporate records, submitted to accountants, from which they are to prepare statements to be submitted to third parties, are such records.

"Insofar as the papers include pre-existing documents and financial records not prepared by the Matters for the purpose of communicating with their lawyers in confidence, their contents have acquired no special protection from the simple fact of being turned over to an attorney. It is only if the client could have refused to produce such papers that the attorney may do so when they have passed into his possession. 8 Wigmore, Evi-

dence, § 2307 (McNaughton rev. 1961); McCormick, Evidence § 93 (1954). Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton v. United States,* 306 F.2d 633.

"[I]f an unprivileged document exists before there exists an attorney-client relationship the mere delivery of the document to an attorney does not create a privilege." *Brown v. St. Paul City R. Co.,* 241 Minn. 15, 62 N.W.2d 688, 44 A.L.R.2d 535; *Kane v. News Syndicate Co., Inc.,* 1 F.R.D. 738.

If this rule is applied, there may be some material in the motion for production of documents which is privileged, but it would take a hearing by the trial court to ascertain whether this material is, as a matter of fact, protected by the privilege.

5. A merger of two corporations continues the existence of one corporation. By a merger one becomes the absorbing corporation and the other the absorbed corporation. The former continues to exist, the latter is extinguished. The stockholders of the absorbed corporation are the stockholders of the absorbing corporation.

For support of this proposition, see C.R.S. 1963, 31-7-1; Chapter 61, Sec. 7041, Fletcher's Cyc. Corp., p. 9, and cases there cited.

I would make the rule absolute.

MR. JUSTICE MCWILLIAMS authorizes me to say that he joins in this dissent.