675 P.2d 1 (1984)
Myron D. NEUSTETER; Shirley R. Neusteter; Myron D. Neusteter, Jr.; William H. Neusteter; Cynthia N. Auer, individuals; the Neusteter Realty Company; Stetco, Inc.; and the Neusteter Company, Colorado corporations, Petitioners,
v.
The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, State of Colorado, the Honorable Roger Cisneros, one of the Judges thereof, Respondents.
No. 83SA151.
Supreme Court of Colorado, En Banc.
January 9, 1984.
*2 Brownstein, Hyatt, Farber & Madden, Mark F. Leonard, Denver, for petitioners.
Holme, Roberts & Owen, Donald K. Bain, Denver, Berndt Lohr-Schmidt, Los Angeles, Cal., for respondents.
LOHR, Justice.
The petitioners, defendants in the action below, seek relief under C.A.R. 21 to prevent the Denver District Court from enforcing an order compelling testimony and the production of documents allegedly falling within the accountant-client privilege, section 13-90-107(1)(f), C.R.S.1973. Recognizing that the disclosure of privileged information might cause irreparable harm to the defendants, we issued a rule to show *3 cause why a writ should not be issued. We now hold that the communications are not privileged in the context of this litigation, and discharge the rule.

I.
We glean the facts relevant to this proceeding from the amended and supplemental complaint.[1] The defendants-petitioners consist of five individuals and three Colorado corporations. The corporations are The Neusteter Company (store company), The Neusteter Realty Company (realty company), and Stetco Inc., a wholly-owned subsidiary of the realty company. The five individual petitioners are Myron D. Neusteter, his wife and his three children (collectively, the Neusteters), who together hold the controlling interests in the store company and the realty company. The store company operates a downtown Denver store. Stetco, Inc., owns real estate in Denver and Colorado Springs.
The plaintiffs are minority shareholders in the two corporations. They are Miriam N. Lackner, who is the younger sister of Myron D. Neusteter, and her four children (collectively, the Lackners). In their complaint, the Lackners allege that the Neusteters have violated their fiduciary duties as officers, directors, and controlling shareholders of the realty company. The Lackners brought the action both individually and derivatively on behalf of the realty company. They seek relief including compensatory and punitive damages for themselves and the realty company from the Neusteters, imposition of a constructive trust on a small number of shares determining control of the realty company, an accounting, and dissolution and liquidation of the realty company.
The Neusteters control 51.11% of the common stock and 47.59% of the preferred stock of the realty company, as well as 71.39% of the common stock[2] and 75.46% of the preferred stock of the store company. The remainder of the common and preferred stock in these corporations is owned legally and beneficially by the Lackners. Since the death of the father of Myron D. Neusteter and Miriam N. Lackner, the Neusteters have utilized their stock ownership to elect themselves to positions as directors and officers of the realty company and the store company and have thereby controlled those corporations.
The Lackners allege that Myron D. Neusteter improperly purchased 250 shares of the common stock of the realty company from his father's estate and caused the realty company to purchase and redeem other shares of its stock while he was both executor of the estate and president of the realty company. Neusteter's purpose in taking this action, the Lackners aver, was to secure to the Neusteters a controlling interest in the realty company and to deprive the Lackners of control. The Lackners ask that a constructive trust be imposed on 125 of the 250 shares for their benefit. They also aver that, when the store company encountered financial difficulties during the past few years, the Neusteters utilized realty company credit for store company benefit, encumbered realty company assets to obtain credit for the store company, and used realty company funds to pay store company debt, among other improper activities calculated to benefit the store company to the detriment of the realty company. Damages for such acts would ordinarily accrue to the realty company in a shareholders' derivative suit. However, since the Lackners also allege that the Neusteters have persistently engaged in illegal, oppressive and fraudulent acts that have involved misapplication and waste of the assets of the realty company, the Lackners request that the realty company *4 be dissolved and that their share of the damages that would accrue to the realty company be distributed to them in liquidation.
The Lackners issued a notice of deposition and a subpoena duces tecum seeking to depose members of the accounting firm retained by the store company and the realty company, and to examine their records.[3] At the scheduled deposition, the accountant did not produce the subpoenaed records and, on advice of counsel, terminated the deposition after preliminary questioning, claiming that the information sought was protected by the accountant-client privilege, section 13-90-107(1)(f), C.R.S.1973. The Lackners moved to compel discovery, and the defendants moved for protective orders. The trial court held a hearing, granted the motion to produce, and denied the request for protective orders. The court reasoned that the accountant-client privilege does not apply in a shareholders' derivative action brought in good faith, notwithstanding the presence of individual claims by the shareholders who initiated the derivative suit. The petitioners then brought this original proceeding challenging that ruling.

II.
Exercise of this court's original jurisdiction is discretionary and is governed by the circumstances of each case. E.g., Sanchez v. District Court, 624 P.2d 1314 (Colo.1981). Generally, pretrial discovery issues are to be resolved by the trial court, exercising its sound discretion. Appeal, not an original proceeding, is the appropriate mechanism for review. However, when a discovery ruling "will have a significant effect on a party's ability to litigate the merits of the controversy and the damage to a party could not be cured on appeal," we may entertain an original proceeding. Kerwin v. District Court, 649 P.2d 1086, 1088 (Colo.1982). Accord, e.g., Caldwell v. District Court, 644 P.2d 26 (Colo.1982); Hawkins v. District Court, 638 P.2d 1372 (Colo.1982). Because in the present case there would be no effective way to undo the breach of the asserted privilege if the trial court's ruling were to be held erroneous on appeal, and substantial interests are at stake, we elected to issue a rule to show cause.

III.
The accountant-client privilege is established by section 13-90-107(1)(f), C.R.S. 1973, which provides that: "A certified public accountant shall not be examined without the consent of his client as to any communication made by the client to him..., or his advice, reports, or working papers given or made thereon in the course of professional employment...." In Pattie Lea, Inc. v. District Court, 161 Colo. 493, 423 P.2d 27 (1967), we held that the accountant-client privilege "does not protect a corporation from being required to disclose to its own stockholders in a derivative suit brought in good faith against the corporation, communications made by the corporation to its certified public accountant." Id. at 498, 423 P.2d at 30. The district court in the present case ruled that this was a good-faith shareholders' derivative suit, and that Pattie Lea was dispositive. The petitioners argue that Pattie Lea is distinguishable on three grounds: they assert that the shareholders' derivative suit is not brought in good faith, that the minority shareholders are also pursuing individual claims, and that these individual claims are inconsistent with the derivative claims. As part of their argument that this is not a good faith derivative action, the petitioners assert that the plaintiffs have not satisfied the special requirements of C.R.C.P. 23.1 with respect to such suits. We first consider the standards to be utilized in determining the applicability of the accountant-client privilege, next apply those standards to the facts of the present case, and finally address the specific objections advanced by the petitioners.

*5 A.
The statutory accountant-client privilege is analogous to the attorney-client privilege, long established at common law and now codified at section 13-90-107(1)(b), C.R.S.1973 (1982 Supp.). The accountant-client privilege encourages full and frank communication between certified public accountants and their clients so that professional advice may be given on the basis of complete information, free from the consequences or the apprehension of disclosure. Cf. Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (discussing the foundations of the attorney-client privilege); Losavio v. District Court, 188 Colo. 127, 533 P.2d 32 (1975) (explaining the background and purposes of the attorney-client privilege). Conflicting policy considerations are introduced, however, when the client is a corporation and the parties seeking disclosure of a communication between a certified public accountant and the corporation are shareholders in that legal entity. We faced that precise situation in Pattie Lea, where an action was brought by a shareholder "in his capacity as a minority stockholder of the various [defendant] corporations ... on behalf of himself and all other stockholders similarly situated." Id. 161 Colo. at 495, 423 P.2d at 28.[4] In that case, we permitted the shareholder to take the deposition of a certified public accountant concerning communications with all defendant corporations in which the shareholder held stock, rejecting the claim of the corporations that the accountant-client privilege precluded disclosure.
After our decision in Pattie Lea, other courts have had occasion to determine the applicability of privileges in actions brought by shareholders on behalf of or against their corporations. The leading case is Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), rejecting a claim of attorney-client privilege in an action by shareholders charging their corporation and its officers with acts injurious to the plaintiffs' interests as shareholders. In doing so, the court began with the "fundamental principle that the public has the right to every man's evidence," 430 F.2d at 1100, and noted that exemptions from the general duty to testify are distinctly exceptional. It adopted Professor Wigmore's view that privileges are to be recognized only when a communication originates in a confidence that it will not be disclosed, the element of confidentiality is essential to the full and satisfactory maintenance of the relation between the parties, the relation is one which in the opinion of the community ought to be sedulously fostered, and the injury that would inure to the relation by the disclosure of the communication is greater than the benefit to be obtained by correct disposal of the litigation. See 8 J. Wigmore, Evidence § 2285 (J. McNaughton ed. 1961). Noting that shareholder litigation in which disclosure of attorney-client communications is sought focuses attention on the final factorbalancing of benefit against injuryin deciding whether a privilege should be recognized, the court held:
The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders *6 to show cause why it should not be invoked in the particular instance.[5]
430 F.2d at 1103-04.[6] Other courts have adopted the holding in Garner. In Re LTV Securities Litigation, 89 F.R.D. 595 (N.D.Tex.1981); Panter v. Marshall Field & Co., 80 F.R.D. 718 (N.D.Ill.1978); Cohen v. Uniroyal, Inc., 80 F.R.D. 480 (E.D.Pa. 1978); In Re Transocean Tender Offer Securities Litigation, 78 F.R.D. 692 (N.D. Ill.1978); Bailey v. Meister Brau, Inc., 55 F.R.D. 211 (N.D.Ill.1972), aff'd, 535 F.2d 982 (7th Cir.1976); cf. Valente v. PepsiCo, Inc., 68 F.R.D. 361 (D.Del.1975) (minority shareholder sought disclosure of communications between controlling shareholder, which was a corporation, and its counsel).
The "good cause" test established in Garner is solidly grounded in the realities of relationships within corporations. The shareholders are the real owners of a corporation. Accounting information records the transactions of the managers as trustees for the shareholders. See Dines v. Harris, 88 Colo. 22, 34, 291 P. 1024, 1028 (1930). Management does not manage for itself; the beneficiaries of its action are the shareholders. Garner v. Wolfinbarger, 430 F.2d at 1101. If a corporation is governed properly, assertion of the accountant-client privilege is consistent with shareholder interests. Where, as here, whether the corporation was governed properly or inimically to shareholder interests is a central issue of the case, shareholders must be permitted to show that there is good cause not to permit disclosure to be thwarted by invocation of the privilege. We therefore subscribe to the "good cause" test adopted in Garner v. Wolfinbarger. We hold that it is applicable in the context of the accountant-client privilege, and conclude that it is an appropriate elaboration and development of our own holding in Pattie Lea.

B.
The record before us amply demonstrates good cause why the accountant-client privilege should not protect the communications between the corporations and their accountant from disclosure in the present case. The Lackners own 48.89% of the common stock and 52.41% of the preferred stock of the realty companylarge amounts by any standard. The complaint details numerous instances in which realty company assets were allegedly wrongfully utilized for the benefit of the store company. If true, the realty company suffered substantial legally cognizable injury. The complaint alleges that the Lackners have been denied access to corporate records necessary to prove their allegations. There is no other apparent source for the information sought. The disclosure relates to past events, not to communications with respect to conduct of the present litigation. The discovery requests are not random but, rather, are focused upon communications, *7 including financial records, bearing directly upon the wrongs claimed by the Lackners. Furthermore, where, as here, the dispute is between the control group and the minority group in a closely held corporation, we find the assertion of a privilege by the majority to withhold relevant financial information from the minority especially lacking in compelling force. See generally, Helms v. Duckworth, 249 F.2d 482, 486-88 (D.C.Cir. 1957); Donohue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 328 N.E.2d 505 (1975). We conclude that the Lackners have established good cause to put aside the protections of the accountant-client privilege with respect to desired accounting communications and records.

C.
The petitioners contend that the accountant-client privilege should be upheld because this action is not a good-faith shareholder suit, as contemplated by Pattie Lea. We disagree.
First, the petitioners assert that the Lackners have not complied with C.R.C.P. 23.1 in that they do not "allege with particularity the efforts, if any, made by [them] to obtain the action [desired] from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for [their] failure to obtain the action or for not making the effort." The complaint reflects, however, that both the directors and the majority shareholders who have the ability to cause the realty company to seek relief are the very persons alleged to have committed the wrongs sought to be remedied. The futility of seeking the desired action from the alleged wrongdoers is patent; under such circumstances, efforts to obtain action by the directors and shareholders are not necessary, and the allegations of wrongdoing themselves adequately establish the reasons for not making the effort to obtain corporate action. See Bell v. Arnold, 175 Colo. 277, 487 P.2d 545 (1971); Van Schaack v. Phipps, 38 Colo.App. 140, 558 P.2d 581 (1976).
The petitioners also argue that the Lackners have not met the requirements of C.R.C.P. 23.1 because they "[do] not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation." This is because the Lackners cannot be said to represent the Neusteters, the very persons charged with wrongdoing, fairly and adequately. This argument misconceives the meaning of C.R.C.P. 23.1. The rule seeks to assure that the plaintiffs fairly represent the interests of all shareholders "similarly situated." Here, only the members of the allegedly wronged minority group can be said to be in that category. See Van Schaack v. Phipps, supra.
The petitioners point out that the Lackners seek restoration of realty company assets not merely because of their interest in that company, but because they own almost half of the realty company and only one quarter of the store company. While this may supply the motivation for the litigation, the Lackners seek no more than to remedy any improper utilization of realty company assets for store company benefit. This is a legitimate concern of all realty company shareholders. The interests of all shareholders, as shareholders of the realty company, and the interests of that corporation are mutual and consistent. The fact that successful prosecution of the action will produce financial benefit to the Lackners and financial detriment to the Neusteters because of the different ownership interests in the realty company and in the store company is simply irrelevant to the question whether the action was brought in good faith.
Finally, the defendants assert in their brief that the Lackners do not have the requisite good faith because they have misused information made available to them in the past, and that their discovery efforts stem from a desire to harass the corporation and from other improper motives. These assertions are not supported by any evidence in the record, and without such support we will not take further cognizance *8 of them. Should information of a sensitive nature be included among the materials sought by the plaintiffs, application to the trial court for particularized protective orders, not a blanket denial of discovery, is the appropriate relief. See Garner v. Wolfinbarger, 430 F.2d at 1104.

D.
The petitioners contend that Pattie Lea does not apply when derivative claims are joined with individual claims asserted by minority shareholders. They cite Weck v. District Court, 158 Colo. 521, 408 P.2d 987 (1965) for the proposition that the privilege can be asserted in actions involving non-derivative individual claims. This is a misreading of both Pattie Lea and Weck. The plaintiffs in Pattie Lea sought individual relief through a class action,[7] and its reasoning is broader than the petitioners here acknowledge. "A corporate entity acts only for its stockholders.... Certified public accountants hired by a corporation are hired for the benefit of all of its stockholders and such employment forbids concealment from the stockholders of information given the accountant by the corporation." Pattie Lea, 161 Colo. at 498-99, 423 P.2d at 30. In Weck, the plaintiffs not only had no claim on behalf of or against the corporation, but they were seeking financial information developed before they became shareholders. See also Weil v. Investment/Indicators, Research and Mgmt., Inc., 647 F.2d 18, 23 (9th Cir.1981). In those circumstances, the considerations in favor of the privilege are stronger. Here, however, the plaintiffs have claims on behalf of the corporation, and they were shareholders for all periods at issue.

E.
Finally, the petitioners allege that the privilege is available because at the same time the plaintiffs bring derivative claims, which are "good" for the corporation, they seek dissolution, which is "bad" for the corporation. This extends "the anthropomorphic concept of the corporationa person capable of injury and knowledge"beyond the point of its usefulness in solving problems involving corporate relationships. See Shell v. Hensley, 430 F.2d 819, 826 (5th Cir.1970); Garner v. Wolfinbarger, 430 F.2d at 1101. Derivative claims are not brought by good samaritans concerned for the welfare of corporations; they are brought by shareholders seeking to protect their investments. There is no contradiction between the plaintiffs' request for restoration of corporate assets and their concurrent application for dissolution because of the prospect of continued mismanagement of the corporation; both remedies are directed at protection of their investments.

IV.
The defendants assert that even if the plaintiffs are allowed access to the accounting records of the realty company they should be denied access to the records of the store company, because their derivative action is brought on behalf of the realty company only. We hold that the rule of Pattie Lea extends to the store company in this situation, where the plaintiffs are major shareholders of both the store company and the realty company, and they allege that the store company, a defendant, has acted improperly in utilizing the assets of the realty company for the store company's benefit.[8]
We discharge the rule to show cause.
NOTES
[1] We express no views on the truth of the averments found in the complaint and recited in this opinion; whether the plaintiffs can establish the alleged facts remains to be determined at trial.
[2] Included in the Neusteters' 71.39% of the common stock of the store company are 1,7131/3 shares owned by E. Richard Auer, who is the husband of defendant Cynthia Auer, the daughter of Myron D. Neusteter. These shares represent 2.47% of the 69,320 shares of the issued and outstanding common stock of the store company.
[3] The Lackners claim that they have been denied access to financial information despite their substantial shareholdings. See section 7-5-117, C.R.S.1973 (1982 Supp.).
[4] Later in Pattie Lea we said, "The certified public accountant-client privilege does not protect a corporation from being required to disclose to its own stockholders in a derivative suit brought in good faith against the corporation, communications made by the corporation to its certified public accountant." Id. at 498, 423 P.2d at 30. It is not clear from the opinion whether we were suggesting that Pattie Lea involved shareholders' derivative claims as well as a class action. Our review of the scanty record in the state archives does not clarify whether shareholders' derivative relief was sought in Pattie Lea.
[5] Garner v. Wolfinbarger considered the privilege question in the absence of a statute establishing an attorney-client privilege. The considerations bearing upon the recognition of a privilege in that case, however, have close analogical value in considering the scope and applicability of the statutory privilege before us in the present case. Here, as in Pattie Lea, we are interpreting the meaning of client's consent under the statute when the client is a corporation and the privilege is invoked against the corporation's shareholders.
[6] The Fifth Circuit Court of Appeals in Garner v. Wolfinbarger suggested some factors bearing on whether good cause has been shown why the privilege should not be invoked:

There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.
430 F.2d at 1104.
[7] See supra note 4.
[8] Some courts have read Garner as applicable to shareholders' derivative actions and not to other shareholder litigation, see Weil v. Investment/Indicators, Research and Mgmt., Inc., 647 F.2d 18 (9th Cir.1981); Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21 (N.D.Ill.1980). A different panel of the same circuit court of appeals that decided Garner, however, has recognized that Garner dealt with the "application of the attorney-client privilege in the context of corporate-shareholder litigation." In Re International Systems and Control Corporation Securities Litigation, 693 F.2d 1235, 1239 (5th Cir.1982). The court in that latter case correctly noted that Garner involved both a shareholders' class action and a derivative suit. Pattie Lea also included a shareholders' class action. See supra note 4.