The **COLORADO STATE BOARD OF ACCOUNTANCY**, Petitioner,

v.

**ZAVERAL BOOSALIS RAISCH, a registered certified public accounting firm, Respondent.**

**No. 96SC579.**

Supreme Court of Colorado,
En Banc.

May 26, 1998.

---

General, Linda A. Siderius, First Assistant Attorney General, Victoria R. Mandell, Assistant Attorney General, Regulatory Law Section, Denver, for Petitioner.

Isaacson Rosenbaum Woods & Levy, P.C., Sheldon E. Friedman, McKenna & Cuneo, L.L.P., Scott S. Evans, Denver, for Respondent.

Kevin O. O'Brien, Boulder, for Amicus Curiae American Civil Liberties Union Foundation of Colorado, Inc.

Rothgerber, Appel, Powers & Johnson, LLP, Frederick J. Baumann, JoAnn L. Vogt, Denver, for Amicus Curiae American Institute of Certified Public Accountants.

Allen & Pinnix, P.A., Noel L. Allen, Raleigh, for Amicus Curiae National Association of State Boards of Accountancy.

Justice HOBBS delivered the Opinion of the Court.

The Colorado State Board of Accountancy (Board) appeals from a decision by the court of appeals allowing the accounting firm of Zaveral Boosalis Raisch (ZBR) to use the accountant-client privilege, *see* § 13–90–107(1)(f)(I), 5 C.R.S. (1997), to refuse compliance, absent the client's consent, with a subpoena issued by the Board. The Denver District Court interpreted exercise of the Board's subpoena power, *see* § 12–2–126(1)(a), 4 C.R.S. (1997), as an exception to the accountant-client privilege. In the absence of express legislative language creating an exception, the court of appeals declined to imply one. *See Colorado State Bd. of Accountancy v. Zaveral Boosalis Raisch,* 931 P.2d 498, 500 (Colo.App.1996).[1] We agree and affirm.

## I.

The Board received an unsigned letter alleging improprieties in the accounting practices of ZBR in connection with two casinos. The writer of this letter accused ZBR of violating accepted accounting principles and of preparing deficient auditing statements

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Merrill Shields, Deputy Attorney

1. The certiorari issue before us is "whether the court of appeals erred by holding that the investigative subpoena authority of the Colorado Board of Accountancy is not an exception to the accountant-client privilege."

which investors and lenders relied upon to their detriment and which the Colorado Gaming Commission also relied on in issuing gaming licenses. In addition, the writer alleged that federal withholding taxes for the businesses were not paid, that Colorado unemployment taxes were not paid, that gaming returns had not been filed or paid, and that ZBR was responsible for these failures.

█ The Board initiated an investigation into ZBR's accounting practices and issued a subpoena *duces tecum* to ZBR requiring the production of ZBR's files. The subpoena applied to:

all tax returns, K–1's, audit reports and opinions, financial statements, notes, workpapers, correspondence with the client, the IRS and Colorado Department of Revenue, reports to the Gaming Division, calculations, and all other documentation used or prepared in connection with these engagements.

When ZBR refused to comply with the subpoena, the Board sought an enforcement order from the district court pursuant to section 12–2–126(1)(a). ZBR objected to the subpoena and filed a Motion For More Definite Statement with the district court. ZBR argued that the Board had not specified whether or not ZBR's clients had waived the accountant-client privilege and, without such a waiver, ZBR could not produce documents protected by the privilege because the privilege is "unqualified." [2]

The Board argued to the district court that subpoenas directed to the accountant's work product and underlying client documents are essential to the Board's ability to investigate Certified Public Accountant (CPA) compliance with the act and Board regulations. The Board invoked its rule of professional conduct requiring CPA compliance with subpoenas and Board investigations.

In concluding that the statute providing the Board with the subpoena power operates

as an exception to the accountant-client privilege in Colorado, the district court reasoned that requiring the Board to obtain client consent to a CPA subpoena would "severely hamper[ ]" the ability of the Board to carry out its statutory investigatory and disciplinary duties.

The court of appeals held that a court, in the absence of statutory authority, cannot "balance the interest of the Board and the interest of the client in determining the applicability of the privilege"; client consent to a Board subpoena seeking confidential accountant-client communications must be obtained. *Zaveral Boosalis Raisch,* 931 P.2d at 499.

## II.

This case presents for our review a privilege statute which is absolute on its face and a state licensing statute granting an absolute and unqualified subpoena power to the Board. Neither statute expressly addresses the situation presented by this case—whether or not an accountant must comply with a Board subpoena for accountant work papers and client documents if the Board has not secured the client's waiver of the privilege for these purposes.

█ We hold that creation of an exception to the accountant-client privilege for Board investigatory subpoenas is a matter for legislative determination. While we recognize that the Board acts in the public interest in regulating CPAs, we decline to imply the existence of a missing statutory provision.

### A.

### *The Board's Investigatory Powers And Duties*

In 1959 the General Assembly created the Board in order to "insure that persons who hold themselves out as possessing profession-

---

**2.** An accountant may raise the privilege on the client's behalf pending the client's decision whether to waive the privilege. The privilege, however, belongs to the client, not the accountant. *See Weck v. District Court,* 158 Colo. 521, 529, 408 P.2d 987, 992 (1965). At oral argument, ZBR informed this court that its clients were aware of the subpoena. The record does not contain any evidence of the clients either waiving or invoking the privilege although ZBR's answer brief states that its clients have invoked the privilege. Since the Board has not demonstrated client consent, we proceed to decision on the basis that ZBR's clients have not waived their privilege.

al qualifications as accountants are, in fact, qualified to render accounting services of a professional nature." Ch. 32, sec. 1, § 2–2–1, 1959 Colo. Sess. Laws 128 (now codified at § 12–2–101, 4 C.R.S. (1997)). In its present form, the statute governing the Board contains provisions for regulating and licensing CPAs. *See* § 12–2–101(1), 4 C.R.S. (1997).

The Board consists of seven members, appointed by the governor, five of whom are CPAs. *See* § 12–2–103. The Board has the power and duty, among other matters, to issue, renew, revoke, or suspend certificates. *See* § 12–2–104. In addition, the Board has the power "on its own motion or on the complaint of any person," to investigate CPAs accused of violating the provisions of the act. § 12–2–126(1)(a). In order to carry out this investigative authority, the legislature gave "the board or any member thereof" the power to "issue subpoenas to compel the attendance of witnesses and the production of documents ... in connection with any investigation under this section." *Id.*

"In order to establish and maintain a high standard of integrity in the profession of public accounting," § 12–2–104(1)(c), the Board also has the power and duty to promulgate rules of professional conduct which govern and control "every person practicing as a certified public accountant in the state." § 12–2–104(1)(c). Board rule 7.7 requires CPAs to comply with legally enforceable subpoenas. *See* Board of Accountancy Rules of Professional Conduct, Rule 7.7(B.)(2.), 3 C.C.R. 705–1 (1978 and as amended). The rule further provides that the submission of client information to the Board which is "disclosed as part of the process of initiating a complaint with, or responding to an inquiry made by, the Board" does not violate the rule's provision requiring confidentiality of client information. *See* Rule 7.7(B.)(5.).

In the case before us, the Board used its subpoena power, invoking its rule requiring CPA compliance, in order to compel the production of documents by ZBR regarding its accounting work for the two casinos. In order to fully investigate the allegations raised by the letter, the Board considered review of this information to be necessary.

As *amicus* American Institute of Certified Public Accountants (AICPA) puts it, "at the center of almost any state board investigation into a CPA engagement will be the CPA's workpapers, for it is only through careful review of the workpapers that practice quality may be effectively assessed."

Despite the essential nature of this information to the Board's inquiry and the Board rule requiring CPA compliance, ZBR refused to comply with the subpoena, asserting that Colorado's privilege statute requires client consent.

### B.

### *The Accountant–Client Privilege*

The accountant-client privilege has existed in the state of Colorado since the legislature first codified it in 1929. *See* ch. 185, sec. 1, § 6563, 1929 Sess. Laws 642, 644 (now codified at § 13–90–107, 5 C.R.S. (1997)). In its current form, the relevant portion of the privilege reads as follows:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . .

(f)(I) A certified public accountant shall not be examined without the consent of his client as to any communication made by the client to him in person or through the media of books of account and financial records or his advice, reports, or working papers given or made thereon in the course of professional employment; nor shall a secretary, stenographer, clerk, or assistant of a certified public accountant be examined without the consent of the client concerned concerning any fact, the knowledge of which he has acquired in such capacity.

§ 13–90–107(1)(f)(I), 5 C.R.S. (1997). This privilege statute places Colorado in line with the majority of jurisdictions which protect

the confidentiality of communications between an accountant and a client.[3]

By protecting the confidentiality of communications between an accountant and a client, the legislature intended to encourage "full and frank communication between certified public accountants and their clients so that professional advice may be given on the basis of complete information, free from the consequences or the apprehension of disclosure." *Neusteter v. District Court,* 675 P.2d 1, 5 (Colo.1984).

However, because testimonial privileges are "exemptions from the general duty to testify," *id.,* they are strictly and narrowly construed. *See, e.g., Neusteter,* 675 P.2d at 5; *McNair v. District Court,* 110 Nev. 1285,

885 P.2d 576 (1994) (per curiam). In the words of Wigmore:

> The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. They should be recognized only within the narrowest limits required by principle. Every step beyond these limits helps to provide, without any real necessity, an obstacle to the administration of justice.

8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2192 (1961 & Supp.1997).[4]

Recognizing that the accountant-client privilege should not be absolute in all circumstances, twenty-seven of the thirty states with a privilege or client confidentiality statute also provide an express exception for accountancy board investigations.[5] The Uni-

---

3. At least 30 states have codified some form of protection for communications between an accountant and a client and generally require client consent before the accountant can divulge such information. *See* Ala.Code § 34–1–21 (1997); Alaska Stat. § .08.04.662 (Michie 1996); Ariz. Rev.Stat. Ann. § 32–749 (West 1996); Colo.Rev. Stat. § 13–90–107(1)(f) (1997); Conn. Gen.Stat. § 20–281j (1997); Fla. Stat. Ann. § 473.316 (West 1991 & Supp.1998); Ga.Code Ann. § 43–3–32 (1994 & Supp.1997); Idaho Code § 9–203A (1990 & Supp.1997); 225 Ill. Comp. Stat. Ann. 450/27 (West 1993 & Supp.1997); Ind.Code Ann. § 25–2.1–14–1 (Michie 1996 & Supp.1997); Kan. Stat. Ann. § 1–401 (1991 & Supp.1997); Ky.Rev. Stat. Ann. § 325.440 (Michie 1995); La.Rev.Stat. Ann. § 37:87 (West 1988 & Supp.1998); Me.Rev. Stat. Ann. tit. 32, § 12279 (West 1988 & Supp. 1997); Md.Code. Ann., Courts and Judicial Proceedings § 9–110 (1995 & Supp.1997); Mass. Gen. Laws Ann. ch. 112, § 87E (West 1996 & Supp.1998); Mich. Stat. Ann. § 18.425(713) (Law. Co-op 1995); Miss.Code Ann. § 73–33–16(2) (1995); Mo. Ann. Stat. § 326.151 (West 1989 & Supp.1998); Mont.Code Ann. § 37–50–402 (1997); Nev.Rev.Stat. Ann. § 49.185 (Michie 1996); N.M. Stat. Ann. § 38–6–6 (Michie 1978 & Supp.1997); N.D. Cent.Code § 43–02.2–16 (1993); Or.Rev.Stat. § 673.455(7) (1997); Pa. Stat. Ann. tit. 63, § 9.11a (West 1996 & Supp. 1997); R.I. Gen. Laws § 5–3.1–23 (1995); Tenn. Code Ann. § 62–1–116 (1997); Tex.Rev.Civ. Stat. Ann. art. 41a–1, § 26 (West Supp.1998); Vt. Stat. Ann. tit. 26, § 82 (1989 & Supp.1997); Wash. Rev.Code § 18.04.405 (1996); *see also* Uniform Accountancy Act and Uniform Accountancy Act Rules, Third Edition, Standards for Regulation Including Substantial Equivalency, § 18 (American Inst. of Certified Pub. Accountants and National Ass'n of State Bds. of Accountancy 1998).

There is no federal accountant-client privilege and state-created privileges are not recognized in federal cases. *See Couch v. United States,* 409

U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). "However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed.R.Evid. 501.

4. In Wigmore's view, privileges should be recognized only when (1) a communication is made in confidence and with the understanding that it will not be disclosed, (2) confidentiality is essential to the full and satisfactory maintenance of the relationship between the parties, (3) the relationship is one which in the community's opinion ought to be fostered, and (4) the injury to the relationship caused by the disclosure is greater than the benefit gained by correct disposal of the litigation. *See* 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2285 (1961); *see also Neusteter,* 675 P.2d at 5.

5. All of the states listed in note 3, except for Colorado, Tennessee, and Missouri, have codified, either in the privilege statute or elsewhere in the code, an exception to the privilege for circumstances such as the one presented by this case—an investigation by a licensing or peer review agency. *See* Ala.Code § 34–1–21 (1997); Alaska Stat. § .08.04.662(a)(3) (Michie 1996); Ariz.Rev.Stat. Ann. § 32–749(B)(1) (West 1996); Conn. Gen.Stat. § 20–281j (1997); Fla. Stat. Ann. § 473.316(5) (West 1991 & Supp.1998); Ga.Code Ann. § 43–3–32(b)(4) (1994 & Supp. 1997); Idaho Code § 9–203A(2.) (1990 & Supp. 1997); 225 Ill. Comp. Stat. Ann. 450/27 (West 1993 & Supp.1997); Ind.Code. Ann. § 25–2.1–14–2 (Michie 1996 & Supp.1997); Kan. Stat. Ann. § 1–401(c) (1991 & Supp.1997); Ky.Rev. Stat. Ann. § 325.440 (Michie 1995); La.Rev.Stat. Ann. § 37:87(C) (West 1988 & Supp.1998); Me. Rev.Stat. Ann. tit. 32, § 12279 (West 1988 &

form Accountancy Act also contains an express exception to its confidentiality provisions for Board investigations. *See* Uniform Accountancy Act and Uniform Accountancy Act Rules, Third Edition, Standards for Regulation Including Substantial Equivalency, § 18 (American Inst. of Certified Pub. Accountants and National Ass'n of State Bds. of Accountancy 1998).

States which have chosen to enact express exceptions to the accountant-client privilege have addressed a number of situations where the privilege does not apply. For example, New Mexico's statute provides that:

> nothing in this [confidentiality] section shall be construed as prohibiting the disclosure of information required to be disclosed by the standards of the public accounting profession in reporting on the audit, review or compilation of financial statements or as prohibiting disclosures in court proceedings, in investigations of an official nature, in proceedings pursuant to provisions of the Public Accountancy Act . . ., in ethical investigations conducted by private professional organizations or in the course of quality reviews.

N.M. Stat. Ann. § 61–28A–24 (Michie 1993). The question here is whether we can read into Colorado's statute an equivalent exception or exceptions.

### C.

*Absence Of A Colorado Statutory Exception*

When reviewing statutes, our primary task is to ascertain and give effect to legislative intent. *See Smith v. Zufelt,* 880 P.2d 1178, 1183 (Colo.1994). To determine intent, we first look to the statutory language and give words and phrases their plain and ordinary meaning. *See Climax Molybdenum Co. v. Walter,* 812 P.2d 1168, 1173 (Colo.1991). If the language of the statute is plain and un-

ambiguous, we do not reach beyond that language to determine intent. *See Mason v. People,* 932 P.2d 1377, 1380 (Colo.1997).

■ Colorado's privilege statute states no exception for Board investigations; nor does the Board's own act. Although we can understand the Board's dilemma in not being provided with the express privilege exception recommended by the Uniform Act and enacted by jurisdictions across the United States, the Board statute does not demonstrate a legislative intent to create such an exception. *See Dawson v. Public Employees' Retirement Assoc.,* 664 P.2d 702, 707 (Colo.1983) (courts must give effect to legislative intent as expressed through a statutory scheme).

The General Assembly has chosen to write express exceptions to other statutory privileges in order to provide the authority it deemed necessary for licensing and disciplinary boards. The physician-patient privilege is illustrative. The privilege protects communications between a patient and his or her physician, surgeon, or nurse, *see* § 13–90–107(1)(d), but it does not apply to "a review of a physician's or registered professional nurse's services by . . . the state board of medical examiners, the state board of nursing, or a person or group authorized by such board to make an investigation in its behalf." § 13–90–107(1)(d)(III)(C), 5 C.R.S. (1997).

Like the Accountancy Board, the state board of medical examiners and the state board of nursing each has a subpoena power to aid board investigation of its licensees. *See* §§ 12–36–104(1)(b), 12–38–120(7), 4 C.R.S. (1997). Because of the express statutory exception to the privilege, however, the medical and nursing boards can issue a subpoena to a licensee and the licensee must, by statute, comply with such a subpoena irrespective of the patient's privilege.

Supp.1997); Md.Code. Ann., Courts and Judicial Proceedings § 9–110(d)(3) (1995 & Supp.1997); Mass. Gen. Laws Ann. ch. 112, § 87E (West 1996 & Supp.1998); Mich. Stat. Ann. § 18.425(713)(2) & (3) (Law. Co-op 1995)(except for disclosure in an ethical investigation by a CPA); Miss.Code Ann. § 73–33–16(2) (1995); Mont.Code Ann. § 37–50–402(2) (1997); Nev.Rev.Stat. Ann. § 49.185 (Michie 1996) (except for investigation regarding breach of duty by accountant); N.M. Stat. Ann. § 61–28A–24 (Michie 1993); N.D. Cent.Code § 43–02.2–16 (1993); Or.Rev.Stat. § 673.455(6) & (7) (1997); Pa. Stat. Ann. tit. 63, § 9.11a (West 1996 & Supp.1997); R.I. Gen. Laws § 5–3.1–23(b) (1995); Tex.Rev.Civ. Stat. Ann. art. 41a–1, § 26(3) (West Supp.1998); Vt. Stat. Ann. tit. 26, § 82(b), (c) & (d) (1989 & Supp.1997); Wash. Rev.Code § 18.04.405(2) (1996); *see also* Uniform Accountancy Act at § 18.

The accounting profession has a responsibility to the public.[6] Whether an exception to the privilege should be written for Board investigations and subpoenas to its licensees is a legislative decision. Unless and until the General Assembly chooses to provide the exception recommended by the Uniform Act and adopted by the vast majority of other states, the Board must obtain client consent for disclosure of information otherwise privileged by the accountant-client relationship.[7]

## III.

■ Accordingly, absent an express statutory exception, the Board's investigatory subpoena power does not create an exception to Colorado's accountant-client privilege. We therefore affirm the judgment of the court of appeals.

SCOTT, J., does not participate.

6. The preamble to the Board's code of professional conduct recognizes that "the accounting profession's public ... rel[ies] on the objectivity and integrity of certified public accountants to maintain the orderly functioning of commerce. This reliance imposes a public interest responsibility on certified public accountants." *See* Board of Accountancy Rules of Professional Conduct, 3 C.C.R. 705–1 (1978 and as amended). Colorado has no language of exception in its statute. The statutes in Tennessee and Missouri contain language of exception but the exceptions do not apply to situations such as the one presented by this case. *See* Mo. Ann. Stat. § 326.151 (West 1989 & Supp.1998) (no privilege when information is "material to the defense of an action against an accountant"); Tenn.Code Ann. § 62–1–116(b) (1997) (privilege does not modify, change or affect "the criminal or bankruptcy laws of this state or of the United States").

7. We are not presented here with a case which seeks recognition of a common law exception to the accountant-client privilege equivalent, for example, to the crime-fraud exception to the attorney-client privilege, *see Law Offices of Bernard D. Morley, P.C. v. MacFarlane,* 647 P.2d 1215, 1220 (Colo.1982), and we do not determine whether Colorado recognizes such an exception to the accountant-client privilege.