**COLORADO STATE BOARD OF NURSING, Petitioner–Appellant,**

v.

**BETHESDA PSYCHIATRIC HOSPITAL, Respondent–Appellee.**

**No. 89CA0966.**

Colorado Court of Appeals, Division IV.

Oct. 11, 1990.

Rehearing Denied Nov. 8, 1990.

Certiorari Denied April 22, 1991.

**1052**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathie A. Clinton and Linda L. Siderius, Asst. Attys. Gen., Denver, for petitioner-appellant.

Downey & Douglas, P.C., Robert C. Douglas, Jr., John R. Sleeman, Jr., Denver, for respondent-appellee.

Opinion by Judge TURSI.

The Colorado State Board of Nursing appeals the trial court's order quashing an administrative subpoena duces tecum issued to Bethesda Psychiatric Hospital (Bethesda) seeking to compel the production of psychiatric treatment records pertaining to a certain registered nurse under investigation by the board. We affirm.

The director of nursing at the nurse's ex-employer filed a written complaint with the board requesting an investigation of the nurse's competence and professionalism as a registered nurse. The complaint alleged that the nurse had failed consistently to perform certain duties during her shift, had failed adequately to supervise staff, had refused to meet with the head nurse, and had made inappropriate remarks about and to patients. Thereafter, an investigator for the board contacted the nurse.

The nurse responded to the complaint, expressing her disagreement with the allegations of the complaint. She also informed the board that she had received psychiatric treatment at Bethesda.

The board asked her permission to obtain the records of this treatment, but she refused. The board then issued an administrative subpoena duces tecum commanding Bethesda to produce its records of treatment provided to the nurse. Bethesda refused to comply with the subpoena, arguing in pleadings before the trial court that the board did not have authority under § 12–38–120(7), C.R.S. (1985 Repl.Vol. 5) to obtain the records of psychiatric treatment provided to the nurse.

The trial court agreed with Bethesda's argument and granted its motion to quash the board's subpoena. It ruled that the pertinent statutes, § 12–38–120(7), C.R.S. (1985 Repl.Vol. 5) and § 13–90–107(1)(d)(III)(C), C.R.S. (1987 Repl. Vol. 6A):

> "apply to patient services provided *by* the nurse, not treatment *to* the nurse." (emphasis in original)

The board, contending that the trial court erred in so interpreting these statutes, maintains that § 12–38–120(7), properly construed, and § 13–90–107(d)(III)(C) empower it to subpoena the records of medical and psychiatric treatment rendered to any licensee if such records may be relevant to a board investigation or discipline of the licensee. We disagree.

In construing the meaning of § 12–38–120(7) our primary task is to ascertain and give effect to the intent of the General Assembly. In this endeavor, we look first to the language of the statute, giving effect to words and phrases in accordance with their plain and ordinary meaning. *See People v. District Court,* 713 P.2d 918 (Colo.1986). We presume that the General Assembly intended the entire statute to be effective, § 2–4–201(1)(b), C.R.S. (1980 Repl.Vol. 1B), and consider the statute as a whole so as to give a consistent, harmonious, and sensible effect to all of its parts.

Further, when faced with determining the meaning of a particular word or

phrase, we consider the meaning of the entire statute or relevant portions thereof. *Adams County School District No. 50 v. Dickey*, 791 P.2d 688 (Colo.1990). If we determine that the legislative intent is clear from the plain language of the statute, then we apply the statute as written. *See Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990).

■ Section 12–38–120(7) provides:

"In order to aid the board in any hearing or investigation instituted pursuant to this section, the board ... shall have the power to issue subpoenas commanding production of copies of any records containing information *relevant to the practice of practical or professional nursing rendered by any licensee,* including, but not limited to, hospital and physician records. The person providing such copies shall prepare them from the original record and shall delete from the copy provided pursuant to the subpoena the name of the patient, but he shall identify the patient by a numbered code, to be retained by the custodian of the records from which the copies were made...." (emphasis supplied)

This language is plain, unambiguous, and determinative of the General Assembly's intent. And, contrary to the board's assertion that the language is all encompassing in empowering the board with authority to compel production of records, a plain reading of the statutory language reveals that the board is empowered to subpoena only certain records.

The emphasized language above indicates that records subpoenaed must contain information relevant to the performance of nursing services, *see* § 12–38–103(9) and (10), C.R.S. (1985 Repl. Vol. 5), "rendered by" the nurse. The critical terms "rendered by" qualify "the practice of ... nursing." This plainly indicates that the General Assembly intended to authorize the subpoena of only those records which pertain to the investigation of nursing conduct engaged in by the nurse, not records containing information relating to services received by the nurse.

■ Private hospital and physician records of a licensee which may otherwise be relevant to the practice of nursing are, therefore, not subject to subpoena unless they are also shown to pertain to nursing services delivered *by* the licensee nurse. If, as here, the records sought pertain to past treatment provided *to* a licensee-nurse, the statute does not empower the board to compel their production.

Furthermore, § 12–38–120(7) refers to the "copies" of records which the board may subpoena. In each instance, the reference, taken in context, is made to copies of *patient,* but not *licensee,* records. The import of these sentences is to ensure not only the anonymity of the patient's identity, but also to avoid trampling upon private and privileged individual interests while providing the board access to the records relevant to the quality of the nurse's professional conduct.

To adopt the interpretation urged by the board, that it is empowered to subpoena copies of a nurse's private medical records, would essentially render these three sentences meaningless. The patient's identity would be that of the nurse and, hence, there would be no need to substitute a "numbered code" for the patient's name to ensure anonymity. So understood, the plain language of the statute, read as a whole, only furthers the legislative intent when it empowers the board to subpoena copies of records of medical treatment provided *by* a nurse to a *patient,* but not that provided *to* the *nurse-licensee.*

This interpretation is also supported by the "disciplinary" nature of § 12–38–120 and the existence of an independently established procedure in § 12–38–119(2), C.R.S. (1985 Repl.Vol. 5) by which the board may require a licensee to undergo a mental or physical examination.

Section 12–38–119(2) provides for an adequate and alternative procedure for determining the mental and physical abilities of a nurse whom the board has "reasonable cause" to believe is unable to practice nursing with reasonable skill and safety. Pursuant to this section, if the board has "reasonable cause" it may require a nurse to

submit to a mental or physical examination by a physician whom the board designates. If the nurse fails to submit to such examination, the board is empowered to suspend the nurse's license until compliance with the examination requirement is met.

A contrary interpretation would be tantamount to concluding that the General Assembly intended to condition professional licensure upon the absolute waiver of one's privilege and right to preserve confidential medical information. The General Assembly has not indicated such an intent and we decline to so hold.

Section 12–38–119(2)(c), C.R.S. (1985 Repl.Vol. 5) is also supportive of this construction inasmuch as it indicates that the General Assembly was aware of the existence of a licensee's other private medical records, legislating that these records *may* be disclosed *if* the *licensee* so chooses. Implicitly, this subsection recognizes that such disclosure is, absent a waiver, absolutely discretionary with the licensee. And, we see nothing which indicates that these other private medical records are subject to the board's power of compulsion. On the contrary, if the board were empowered by subsection (7) to compel production of a nurse's private medical records, § 12–38–119(2)(c) would be rendered substantially meaningless since the board would have likely already obtained the licensee's records.

■ The board argues that this interpretation circumscribes the board's function of protecting the public from incapable professionals since, without these records, the board cannot obtain the "reasonable cause" required to order a physical or mental examination. We are not persuaded.

"Reasonable cause" may be established through numerous avenues other than through the involuntary production of private medical records. Upon reaching a determination that "reasonable cause" exists, the board is authorized to require the respective licensee to submit to medical or mental examination. If the licensee refuses to do so, the board may invoke its power to suspend the individual. If, on the other hand, the licensee does submit to the examination, the board acquires the information it needs to act in fulfillment of its function. This statutory scheme, we conclude, adequately protects the public.

■ Finally, we note that there is no statutory language which expressly waives a licensee's privileges of physician/patient or psychologist/client confidentiality under the circumstances before us. Although the board argues that § 13–90–107(1)(d)(III)(C) exempts the board from a licensee's invocation of his or her inviolate privilege against disclosure of the physician/patient or psychologist/client confidences, we find no merit in this position.

Section 13–90–107(1)(d)(III)(C) provides in pertinent part that a patient possesses the privilege to keep a registered professional nurse from disclosing information about the patient acquired during the course of rendering medical treatment or care, except in those circumstances in which the board conducts an examination as a part of a "review of a ... registered professional nurse's services...."

The plain language of this section, construed in harmony with § 12–38–120(7), indicates that the exemption is provided to the State board of Nursing only when it is investigating *services rendered by* a registered professional nurse, not when investigating a nurse's history of medical or psychiatric treatment. This conclusion follows from the fact that had the General Assembly intended to qualify the physician/patient or psychologist/client privileges, it would have "made its intent known in unmistakable terms." *See Clark v. District Court*, 668 P.2d 3 (Colo.1983). This has not been done.

In light of the plain meaning of §§ 12–38–120(7) and 13–90–107(1)(d)(III)(C), we conclude that the trial court did not err in quashing the board's administrative subpoena duces tecum.

The judgment is affirmed.

REED and RULAND, JJ., concur.