**COLORADO STATE BOARD OF ACCOUNTANCY, Petitioner–Appellee,**

v.

**Zaveral Boosalis RAISCH, Regis Certified Public Accounting Firm, Respondent–Appellant.**

No. 95CA0922.

Colorado Court of Appeals, Div. A.

June 27, 1996.

Rehearing Denied July 25, 1996.

Certiorari Granted Jan. 21, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Victoria R. Mandell, Assistant Attorney General, Denver, for Petitioner–Appellee.

McKenna & Cuneo, L.L.P., Sheldon E. Friedman, Denver, for Respondent–Appellant.

Opinion by Judge NEY.

In proceedings relative to a licensure investigation, respondent, Zaveral Boosalis Raisch, a certified public accountant, filed a motion seeking to resist a subpoena issued by the Colorado State Board of Accountancy (Board) for production of documents. The trial court denied the motion, and respondent appeals. We reverse and remand with directions.

After receiving an anonymous letter asserting that respondent had been involved in a number of accounting and auditing irregularities, the Board initiated an investigation. As part of the investigation, the Board issued a subpoena for the production of various documents which the respondent asserted were confidential and privileged by statute. Following respondent's failure to comply with the subpoena, the Board initiated an enforcement proceeding in the trial court.

Respondent then filed the motion at issue here, asserting that, because the documents sought were subject to the accountant-client privilege, the Board was required to show evidence of client consent before they would have to be produced. This privilege, set forth in § 13–90–107(1)(f)(I), C.R.S. (1995 Cum.Supp.) provides in pertinent part:

A certified public accountant shall not be examined without the consent of his client as to any communication made by the client to him in person or through the media of books of account and financial records or his advice, reports, or working papers given or made thereon in the course of professional employment. . . .

The trial court concluded that, because of the competing public policy interest of the General Assembly to insure and maintain high standards of professional conduct, *see* § 12–2–101 C.R.S., (1991 Repl.Vol. 5A), the authority granted the Board during an investigation to compel the production of documents, *see* § 12–2–126(1)(a) C.R.S. (1991 Repl.Vol. 5A), created an exception to the accountant-client privilege. Therefore, the court determined that the Board was not required to obtain consent of clients prior to subpoenaing the client documents in respondent's possession and denied respondent's motion for a more definite statement requesting evidence of client waiver of the privilege. Respondent's subsequent motion for reconsideration of this ruling was also denied. This appeal followed.

I.

Respondent contends that the trial court erred in compelling him to respond to the subpoena for production of records without the consent of his clients. We agree.

The crux of respondent's argument is that the trial court misconstrued the accountant-client privilege as "subject to" the authority of the Board under § 12–2–126(1)(a). Specifically, respondent argues that § 13–90–107(1)(f)(I) does not, without statutory authority, permit a court to balance the interest of the Board and the interest of the client in determining the applicability of the privilege. We agree.

In construing a statute, our primary task is to ascertain and give effect to the intent of the General Assembly. *State Engineer v. Castle Meadows, Inc.*, 856 P.2d 496 (Colo.1993). To accomplish this task, we turn first to the words of the statute. Legislative words and phrases should be interpreted according to their plain and obvious meaning, *People v. District Court*, 713 P.2d 918 (Colo.1986), and a forced, subtle, or strained construction should be avoided if the language is simple and its meaning is clear. *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973).

**500**

■ Here, the plain language of § 13–90–107(1)(f)(I) provides that a certified public accountant and specified employees of the accountant "shall" not be examined as witnesses without the consent of the client as to "any" communication by the client. The generally accepted and familiar meaning of "shall" is that the term is compulsory and that its use in a statute is "usually deemed to involve a mandatory connotation." *People v. District Court, supra,* 713 P.2d at 921. The term "any" is an inclusive term often used synonymously with the terms "every" and "all." *Black's Law Dictionary* 94 (rev. 6th ed. 1990).

■ Applying the common meaning of these words, we conclude that the General Assembly clearly intended the accountant-client privilege to apply without exception to all communications between the client and the certified public accountant and the accountant's employees specified in the statute.

■ When the General Assembly intends to qualify a statutory privilege, it generally makes its intent known in unmistakable terms. *Colorado State Board of Nursing v. Bethesda Psychiatric Hospital,* 809 P.2d 1051 (Colo.App.1990). These unmistakable terms may be by express exception. *See* § 13–90–107(1)(d)(I) through (V), C.R.S. (1987 Repl.Vol. 6A) (listing a number of exceptions to privileged communications between physician and patient). Or, the exceptions may be by express language within the privilege statute itself. *See* § 13–90–107(1)(e) C.R.S. (1987 Repl.Vol. 6A) (authorizing the court to balance the public interest in determining the applicability of the privilege for communications made in confidence to public officers).

There is, simply, no analogous legislative expression in § 13–90–107(1)(f)(I) which would indicate that the General Assembly intended to qualify the accountant-client privilege. Accordingly, we decline to introduce one into the statute despite the public policy asserted and the Board's role, under § 12–2–126(1)(a), to insure and maintain high standards of professional conduct.

Indeed, given that the General Assembly has clearly expressed its intent that the accountant-client privilege be unqualified, we conclude that to construe the privilege in recognition of a perceived or implied policy conflict raised by §§ 12–2–101 and 12–2–126(1)(a) would be to "substitute [our] opinion as to how the law should read in place of the law already enacted." *Dawson By & Through v. Public Employees Retirement Ass'n,* 664 P.2d 702, 707 (Colo.1983).

The "good cause" test set forth in *Neusteter v. District Court,* 675 P.2d 1 (Colo.1984) does not alter our conclusion. *Neusteter* involved a corporation's attempt to assert the accountant-client privilege against its shareholders. Although the court held that, in such a situation, shareholders should have an opportunity essentially to "test" the applicability of the accountant-client privilege, the court's analysis turned not on a competing public policy but rather, on the realities of the relationships within corporations. This analysis is not applicable to the circumstances here. *Neusteter v. District Court, supra.*

■ In summary, we conclude that the accountant-client privilege applies to all communications between the client and the certified public accountant, his or her secretary, stenographer, and assistant. The trial court erred, therefore, in construing the privilege as "subject to" the authority of the Board under § 12–2–126(1)(a) and in denying respondent's motion for a more definite statement requesting evidence of client waiver of the accountant-client privilege prior to responding to the subpoena for production.

## II.

In light of this disposition, we need not address the remaining contentions of respondent regarding the actions of the Board.

The order denying respondent's motion is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

STERNBERG, C.J., and PIERCE *, J., concur.