COLORADO DEPARTMENT OF REVE-
NUE and Renny Fagan, in his official
capacity as Executive Director of the
Colorado Department of Revenue, Plain-
tiffs–Appellants,

v.

CITY OF AURORA, Colorado,
Defendant–Appellee.

No. 00CA0535.

Colorado Court of Appeals,
Div. II.

March 1, 2001.

Certiorari Denied Oct. 1, 2001.

Ken Salazar, Attorney General, Carolyn
Lievers, Assistant Attorney General, Denver,
CO, for Plaintiffs–Appellants.

Charles H. Richardson, Stacie Glass Ev-
ans, Michael J. Hyman, Office of the City
Attorney, Aurora, CO, for Defendant–Appel-
lee.

Opinion by JUDGE PLANK.

The Colorado Department of Revenue
(Revenue) and Renny Fagan, in his official
capacity as Executive Director of Revenue
(Revenue Director), appeal from the sum-
mary judgment in favor of the City of Aurora
(Aurora) on its appeal from the Revenue
Director's final determination that Aurora
was liable for state use tax on golf carts
rented to the customers of Aurora's Spring-
hill Golf Course (Springhill). We reverse
and remand.

The dispositive facts are undisputed. In
operating Springhill, Aurora rents golf carts
to the public for a fee and does not charge
tax on those rentals. Aurora did not pay
sales or use tax on the carts at the time of

purchase, claiming an exemption as a governmental entity.

As a result of audits of Springhill, Revenue issued assessments and notices of deficiency for sales tax on golf cart rental charges to the public. Aurora filed a notice of protest. In a subsequent letter, Revenue "agreed" to change the assessment from sales tax on the golf cart rentals to use tax on the purchase price of the rental carts.

Following a hearing, the Revenue Director concluded that Aurora was liable for use tax in the amount of $1815.58, including interest and penalties. Aurora appealed to the trial court, disputing its liability but not the tax amount. In support of its subsequent summary judgment motion, Aurora argued that: (1) it was not liable for the tax because the pertinent statute contains no specific declaration that municipalities are included as taxpaying entities; (2) Aurora was exempt from the tax because it was operating in its governmental capacity; and (3) the short-term lease of golf carts was not a taxable event because the rental customers were not granted the right to the continuous use or possession of tangible personal property.

The trial court granted Aurora's motion "for all three of the reasons set forth in the City's Brief in Support of the Motion," and Revenue appealed. On appeal, Aurora does not rely on the third ground it raised in its motion for summary judgment.

### I.

■ Revenue contends that there is a statutory basis for assessing sales or use tax against a municipality such as Aurora even though the applicable statute does not expressly include municipalities as tax-paying entities. We agree.

■ The interpretation of a statute is a question of law that is reviewed *de novo*. *Evinger v. Greeley Gas Co.*, 902 P.2d 941 (Colo.App.1995). In construing a statute, a court must ascertain and give effect to legislative intent, looking primarily to the statutory language employed by the General Assembly. *Colorado Department of Revenue v. Woodmen of the World*, 919 P.2d 806 (Colo. 1996). Each word of the statute should be given effect. *City of Florence v. Board of Waterworks*, 793 P.2d 148 (Colo.1990).

■ Furthermore, when tax statutes are construed, there is a strong presumption that taxation is the rule and exemption the rare exception. *Colorado Department of Revenue v. Woodmen of the World, supra.*

Here, the relevant statute is the Emergency Retail Sales Tax Act of 1935, § 39–26–101, et seq., C.R.S.2000 (Sales and Use Tax Code). Section 39–26–202(1)(a), C.R.S.2000, provides in pertinent part:

[T]here is imposed and shall be collected from every person in this state a tax or excise at the rate of three percent of storage or acquisition charges or costs for the privilege of storing, using, or consuming in this state any articles of tangible personal property purchased at retail.

Section 39–26–201(2), C.R.S.2000, defines "person" as "an individual, corporation, limited liability company, partnership, firm, joint adventure, association, estate, trust, receiver, or group acting as a unit." The definition does not expressly include municipalities.

However, § 39–26–203(1)(e), C.R.S.2000, provides that the use tax does not apply to "the storage, use, consumption, or loan of tangible personal property by or to ... the state of Colorado ... or its political subdivisions *in their governmental capacities only*" (emphasis added). Similarly, § 39–26–114(1)(a)(I), C.R.S.2000, provides that the sales tax does not apply to "sales to ... the state of Colorado ... or its political subdivisions *in their governmental capacities only*" (emphasis added).

Colorado courts have long recognized the distinction between actions of a city in its governmental or legislative capacity, in which it is a sovereign and governs its citizens, and actions of a city in its proprietary capacity, in which it acts for the private advantage of its residents and for itself as a legal entity. *See, e.g., Colowyo Coal Co. v. City of Colorado Springs*, 879 P.2d 438 (Colo.App.1994). The supreme court has criticized the distinction as "analytically unsound" and "an unreliable means of distinguishing exercises of municipal authority," *City & County of Denver v.*

*Mountain States Telephone & Telegraph Co.,* 754 P.2d 1172, 1175 (Colo.1988), as well as "fraught with inconsistencies in its application," *City of Colorado Springs v. Timberlane Associates,* 824 P.2d 776, 781 (Colo. 1992). The distinction has been abolished in the tort liability context by the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S.2000, and has been found to be inapplicable in the utilities relocation context, *City & County of Denver v. Mountain States Telephone & Telegraph Co., supra,* and the municipal zoning context, *Clark v. Town of Estes Park,* 686 P.2d 777 (Colo.1984). Nevertheless, the governmental/proprietary distinction is still utilized. *See, e.g., Cherry Creek Aviation, Inc. v. City of Steamboat Springs,* 958 P.2d 515 (Colo.App.1998). *See also Bennett Bear Creek Farm Water & Sanitation District v. City & County of Denver,* 928 P.2d 1254 (Colo.1996) (declining to extinguish all reference to governmental/proprietary distinction).

Acknowledging the continuing existence of the governmental/proprietary distinction and applying the rules of construction cited above, we conclude that the General Assembly intended a political subdivision of the state of Colorado, such as Aurora, to be subject to sales or use tax when it acts in its proprietary capacity rather than its governmental capacity.

## II.

■ Revenue asserts that Aurora is subject to the Sales and Use Tax Code in this instance because it was acting in its proprietary capacity rather than its governmental capacity. We agree.

In the earliest statement of the governmental/proprietary distinction in Colorado, this court adopted the rationale of *Illinois Trust & Savings Bank v. City of Arkansas City,* 76 F. 271 (8th Cir.1896), stating:

> A city has two classes of powers[ ]—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it not for the purpose of governing its people, but for the private advantage of the inhabitants of the city, and of the city itself as a legal personality.

*City of Denver v. Hubbard,* 17 Colo.App. 346, 368, 68 P. 993, 1000 (1902) (holding that city's contracting with corporation for provision of streetlights was proprietary, not governmental).

Aurora points out that Springhill's golf carts are available not only to inhabitants of Aurora, but to the public generally, indicating that the provision of golf cart rentals is a governmental function. Relying on *Pueblo Aircraft Service, Inc. v. City of Pueblo,* 498 F.Supp. 1205 (D.Colo.1980), *aff'd,* 679 F.2d 805 (10th Cir.1982); *Cherry Creek Aviation, Inc. v. City of Steamboat Springs, supra;* and *City of Pueblo v. Weed,* 39 Colo.App. 415, 570 P.2d 15 (1977), *rev'd on other grounds,* 197 Colo. 52, 591 P.2d 80 (1979), Aurora further argues that because the State of Colorado has specifically authorized municipalities to acquire, equip, and maintain recreational facilities, *see* §§ 29–7–101 and 31–25–201, C.R.S.2000, these functions are governmental in nature, and, consequently, Aurora's provision of golf cart rentals is also governmental.

However, those cases are distinguishable from the present case. In the first two, the operation of airports was explicitly declared by the applicable statute to be a governmental function. We are aware of no similar statutory declaration for golf cart rentals. In the third, the court held that a municipality was entitled to a governmental exemption from state sales and use tax for projects undertaken pursuant to the Economic Development Revenue Bond Act, now codified at § 29–3–101, et seq., C.R.S.2000, the stated purpose of which act was to achieve certain statewide economic objectives. The statutory provisions relied on by Aurora have no comparable statement of statewide purpose.

Notwithstanding the fact that Springhill's golf carts are available to the general public, the provision of golf cart rentals, even if implicitly authorized by statutory provisions on municipal recreation facilities, is not a power conferred upon a municipality for the purpose of governing its people. Rather, Aurora's provision of golf cart rentals impresses us as being an exercise of its quasi-private power to act for the advantage, though not the exclusive advantage, of its inhabitants. *See City of Denver v. Hubbard,*

*supra; see also Colowyo Coal Co. v. City of Colorado Springs, supra* (city was acting in proprietary capacity when it contracted for supply of coal); *Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991) (public airport authority was acting in proprietary capacity when it adopted fee structure for off-site car rental agency to conduct business at airport).

Accordingly, we hold that in renting golf carts to customers at Springhill, Aurora was acting in its proprietary capacity.

### III.

██ Revenue argues that the Sales and Use Tax Code imposes tax on either the rental charge for or the purchase price of the golf carts. We agree.

Section 39–26–114(1)(a), C.R.S.2000, provides in pertinent part:

There shall be exempt from taxation under the provisions of this part 1 [(Sales Tax)] the following:

. . .

(XII) Any right to the continuous possession or use for three years or less of any article of tangible personal property under a lease or contract, *if the lessor has paid to the state of Colorado a sales or use tax on such tangible personal property upon its acquisition.* The department of revenue may permit a lessor of tangible personal property leased for a period of three years or less to acquire such property free of sales or use tax if the lessor agrees to collect sales tax on all lease payments received on such property.

(Emphasis added.)

It is undisputed that Aurora did not pay a sales or use tax on the golf carts upon their acquisition. And, as discussed above, Aurora was not acting in its governmental capacity in providing golf carts for rent. Therefore, even assuming, without deciding, that § 39–26–114(1)(a)(XII) includes an implied exemption if no sales or use tax was due upon acquisition, such an exemption would not apply to Aurora in this case.

Although under § 39–26–106(2)(a), C.R.S. 2000, a vendor is to charge the consumer or user the applicable sales tax, the vendor remains liable for payment of the tax under § 39–26–105, C.R.S.2000.

Aurora did not charge its customers sales tax on the golf cart rentals and therefore is liable for payment of the tax under § 39–26–105. In his final determination, the Revenue Director concluded that Aurora's failure to collect sales tax on the rentals obligated Aurora to pay the tax and necessitated that the tax amount be calculated based upon the cost of acquisition, pursuant to § 39–26–114(1)(a)(XII). We agree with this conclusion.

Although the record does not make clear precisely why the assessment was changed from sales tax to use tax, assessment of use tax is proper. *See Howard Electrical and Mechanical, Inc. v. Department of Revenue,* 771 P.2d 475 (Colo.1989) (use tax is a complement to sales tax and is a tax upon right to use property on which sales tax has not been paid). In this case, whether the tax is denominated sales tax or use tax, the amount is the same, *see* §§ 39–26–106 and 39–26–202, C.R.S.2000, and Aurora is liable for its payment.

The judgment is reversed, and the cause is remanded to the trial court for entry of judgment in favor of Revenue consistent with the views expressed in this opinion.

JONES and CASEBOLT, JJ., concur.