Anita MOSS and Robert Westby,
Plaintiffs–Appellants,

v.

MEMBERS OF the COLORADO WILD-
LIFE COMMISSION, in their official
capacities; the Colorado Division of
Wildlife, an administrative agency of the
State of Colorado; and the Boulder
County Board of Commissioners, in
their official capacities, Defendants–Ap-
pellees.

No. 09CA1262.

Colorado Court of Appeals,
Div. IV.

May 13, 2010.

Susan Morath Horner, P.C., Susan Morath Horner, Boulder, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Tim Monahan, First Assistant Attorney General, Denver, Colorado, for Defendants–Appellees Members of the Colorado Wildlife Commission and Colorado Division of Wildlife.

H. Lawrence Hoyt, County Attorney, Andrew R. MacDonald, Assistant County Attorney, Boulder, Colorado, for Defendant–Appellant Boulder County Board of Commissioners.

Opinion by Judge WEBB.

This action pits safety concerns of plaintiffs, Anita Moss and Robert Westby, over firearm hunting in rural Boulder County near their homes, against the regulatory authority of defendants Colorado Wildlife Commission (CWC) and Colorado Division of Wildlife (CDOW) (collectively the Division) which allow firearm hunting in the Sugar Loaf Mountain Area (Sugar Loaf), where plaintiffs live. Despite having passed a resolution restricting the discharge of firearms in Sugar Loaf, defendant Boulder County Board of Commissioners (the County) supports dismissal of this action for plaintiffs' failure to exhaust administrative remedies before the Division. We affirm the dismissal.

## I. Facts

Since 1980, Sugar Loaf has been subject to a County resolution restricting the discharge of firearms adopted under section 30–15–302, C.R.S.2009. The statute provides, as relevant here:

(1) The board of county commissioners ... may designate, by resolution, areas in the unincorporated territory of such county in which *it is unlawful for any person to discharge any firearms, except* a duly authorized law enforcement officer acting in the line of duty, *but nothing in this subsection (1) shall prevent the discharge of any firearm in shooting galleries or in any private grounds or residence under circumstances when such firearm can be discharged in such a manner as not to endanger persons or property* and also in such a manner as to prevent the projectile from any such firearm from traversing any grounds or space outside the limits of such shooting gallery, grounds, or residence.

(Emphasis added.) Nevertheless, the Division has issued and continues to issue licenses and permits for big game hunting with firearms in the game management unit that includes Sugar Loaf. It has not imposed any restrictions on hunters "to prevent the projectile ... from traversing any grounds." The complaint alleges confrontations between hunters and residents arising from discharge of firearms near homes and roads.

Based on section 30–15–302(1), plaintiffs sought declaratory relief that all firearm hunting is unlawful in Sugar Loaf; mandamus relief to compel the Division to recognize and give effect to the County's resolution; and injunctive relief prohibiting the Division from issuing licenses and permits for hunting in Sugar Loaf.

The Division moved to dismiss for plaintiffs' failure to exhaust their administrative remedies. The County moved to dismiss for failure to state a claim on which relief could be granted.[1] Plaintiffs moved for summary judgment against the Division. They argued that exhaustion was unnecessary because the County resolution effectively bans all firearm hunting in Sugar Loaf as a matter of law, and thus leaves the Division with no discretion.

At the trial management conference, the court heard argument on these motions but did not take evidence. It dismissed the case against the Division for lack of subject matter jurisdiction based on plaintiffs' failure to exhaust administrative remedies; dismissed the case against the County, which had been joined as an interested party under C.R.C.P.

---

1. Plaintiffs did not contest the County's motion to dismiss below and make no separate argument addressing this motion on appeal.

57(j), but no separate claim was asserted against it;[2] and, based on these dismissals, denied plaintiffs' motion for summary judgment without considering the merits. The court did not explain its rationale for the exhaustion ruling beyond adopting "the reasons set forth by the defendants."

## II. Mootness

Statements in the briefs indicated that following dismissal and while this appeal was pending, plaintiffs had unsuccessfully petitioned the Division to restrict hunting in Sugar Loaf. We directed the parties to file supplemental briefs on mootness. Plaintiffs and the Division agree that the specific question of failure to exhaust is moot. Nevertheless, plaintiffs assert that we should resolve the exhaustion question. The Division denies that any exception to mootness applies.

An issue is moot when the court's ruling will have no practical legal effect on the existing controversy because a party has complied with the order in dispute. *See Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426–27 (Colo.1990). In that event, an appellate court will usually decline to address the merits. *USAA v. Parker*, 200 P.3d 350, 356 (Colo.2009). However, the appellate court may do so "where interests of a public nature are asserted under conditions that may be repeated immediately." *Feigin v. Colo. Nat'l Bank*, 897 P.2d 814, 817 (Colo. 1995).

Here, this test is satisfied. Because the other residents would be affected by a ruling addressing any risks of hunting in Sugar Loaf, interests of a public nature are implicated. And so long as the Division continues to license such hunting, the conditions that led plaintiffs to seek relief are ongoing, subject only to differing seasonality of hunting various species of wildlife. Further, we note that Sugar Loaf residents other than plaintiffs could raise identical claims. *Cf. Morgan County Dep't of Human Services ex rel. Yeager*, 93 P.3d 589, 593 (Colo.App.2004).

Accordingly, we turn to the merits of the exhaustion issue.

## III. Denial of Summary Judgment

Plaintiffs' contention that the trial court erred when it denied their motion for summary judgment is not properly before us. *See Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 573 n. 6 (Colo. 2008) (denial of summary judgment motion not appealable).

## IV. Exhaustion

The exhaustion of administrative remedies doctrine "serves as a threshold to judicial review that requires parties in a civil action to pursue available statutory administrative remedies before filing suit in district court." *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo.1998). If a party fails to satisfy the exhaustion requirement, the district court is without jurisdiction to hear the action. *Id.* This requirement "prevents piecemeal application for judicial relief and unwarranted interference by the judiciary in the administrative process." *Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1197 (Colo.1993). It also allows an agency to correct errors on matters within its expertise and to compile a record adequate for judicial review. *Colorado Dep't of Public Health & Environment v. Bethell*, 60 P.3d 779, 784 (Colo.App.2002).

When administrative remedies are provided by statute or ordinance, those procedures must be followed if the contested matter is within the jurisdiction of the administrative authority, *Horrell*, 861 P.2d at 1197, unless the administrative remedy would not be meaningful. *See Bazemore v. Colorado State Lottery Div.*, 64 P.3d 876, 880 (Colo. App.2002). Further, exhaustion is unnecessary "when the matter in controversy raises questions of law rather than issues committed to administrative discretion and expertise." *Golden's Concrete Co.*, 962 P.2d at 923. In *Horrell* for example, the court explained that the agency "did not have the authority to determine the two constitutional issues asserted." 861 P.2d at 1199. Howev-

---

**2.** During oral argument, plaintiffs' counsel stipulated that they were "not seeking any affirmative relief against the County."

er, this exception does not apply to interpreting an agency's enabling act. *Kendal v. Cason*, 791 P.2d 1227, 1229 (Colo.App.1990).

■ Nevertheless, plaintiffs argue that the exhaustion requirement applies only to quasi-judicial action, not to the quasi-legislative (i.e., rulemaking) action at issue here. We discern no such absolute rule. *Compare Dill v. Bd. of County Comm'rs*, 928 P.2d 809, 815 (Colo.App.1996) (exhaustion "is not necessarily a prerequisite to establish standing when issues presented to the court depend on interpretation of legislation adopted by a governmental entity"), *with Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 219 (Colo.1996) (referencing the exhaustion requirement in the context of a "rulemaking proceeding"). Unlike in *Dill*, exhaustion would not force plaintiffs to establish finality by violating a rule and risking sanctions before challenging the rule, which is permissive, not prohibitory.

Moreover, while the record does not show that plaintiffs participated in the Division's prior rulemaking, they respond to the Division's assertion that they did so by explaining: "the area of Sugar Loaf Mountain at issue in the 2005 rulemaking was not the area covered by Resolution 80–52, and that petition was neither premised nor resolved on issues relating to the preemption of the State Defendants regulation." *See Ass'n of Flight Attendants–CWA v. Chao*, 493 F.3d 155, 158–59 (D.C.Cir.2007) (applying exhaustion where, despite a prior rulemaking petition denied ten years earlier, plaintiffs did not "petition the agencies directly for the relief they seek in this lawsuit"). Thus, requiring plaintiffs to do so now would further the objectives of exhaustion—drawing on agency expertise, furthering judicial economy by affording the Division an opportunity to resolve the issue in their favor, and creating a better record for judicial review.

■ We review a motion to dismiss for lack of subject matter jurisdiction under a mixed standard: a trial court's evidentiary findings are reviewed for clear error and its legal conclusions are reviewed de novo. *Bazemore*, 64 P.3d at 878.

## V. Section 30–15–302

Plaintiffs contend failure to exhaust their administrative remedies is excused because section 30–15–302 bans all firearm hunting in those areas restricted by a county, and thus displaces the regulatory discretion of the Division. This contention requires interpretation of section 30–15–302. Our interpretation contrary to plaintiffs' position on exhaustion could also impact their position on the merits, as articulated in their motion for summary judgment. But neither that motion nor any other aspect of the merits is properly before us.

■ Because section 30–15–302 is neither part of the Division's enabling act nor otherwise addresses its jurisdiction, interpretation raises a question of law not committed to administrative discretion. Thus, we interpret the statute de novo. *See Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006) (statutory interpretation is a question of law). However, we do so only to resolve whether exhaustion of administrative remedies is a prerequisite to the district court's jurisdiction, which is the sole issue before us, without expressing any opinion on the merits of plaintiffs' claims. *See Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 369 (Colo.2003) ("Because the issue is not squarely before us, we do not decide the question.").

■ When interpreting statutes, we give effect to the legislature's intent, *Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 284 (Colo.2000), looking primarily at the statutory language employed by the General Assembly. *Colo. Dep't of Revenue v. City of Aurora*, 32 P.3d 590 (Colo.App.2001). We give consistent, harmonious, and sensible effect to the statutory scheme as a whole and avoid interpretations that lead to absurd results. *Renco Assocs. v. D'Lance, Inc.*, 214 P.3d 1069, 1071 (Colo.App.2009).

■ If the statutory language is clear and unambiguous, we do not engage in further analysis. *Klinger*, 130 P.3d at 1031. If not, we may consider extrinsic information, such as legislative history. *Id.*

"All wildlife within this state not lawfully acquired and held by private ownership is

declared to be the property of this state." § 33–1–101(2), C.R.S.2009. The Division "is responsible for all wildlife management, for licensing requirements, and for the promulgation of rules, regulations, and orders concerning wildlife programs." § 33–1–104(1), C.R.S.2009. It has the authority to determine "under what circumstances, when, in which localities, [and] by what means ... the wildlife of this state may be taken and, further, to shorten, extend, *or close seasons on any species of wildlife in any specific locality* or the entire state." § 33–1–106(1)(a), C.R.S.2009 (emphasis added). The Division has exercised this authority by implementing closures or restrictions on using firearms to take wildlife. *See* Colorado Division of Wildlife Regulation No. 020.E.4 & .5, 2 Code Colo. Regs. 406–0; Regulation No. 209.E.1, 2 Code Colo. Regs. 406–2; Regulation No. 504.I, 2 Code Colo. Regs. 406–5.

Plaintiffs do not dispute the Division's broad regulatory power. Nor do they assert that section 30–15–302 is ambiguous. Rather, they argue that by using the term "any" in section 30–15–302—"it is unlawful for *any* person to discharge any firearms"—the legislature intended to ban all firearm hunting in those areas designated by a county, leaving nothing for the Division to regulate. *See Colorado State Bd. of Accountancy v. Raisch*, 931 P.2d 498, 500 (Colo.App.1996) (the term "any" is an inclusive term often used synonymously with "every" and "all"), *aff'd*, 960 P.2d 102 (Colo.1998). We disagree, for three reasons.

First, plaintiffs' interpretation is contrary to the statute's plain language. Section 30–15–302 does not allow a county to prohibit "the discharge of any firearm in shooting galleries *or in any private grounds or residence*," where certain specified circumstances exist. While those circumstances specified in section 30–15–302 address the "manner" of such a discharge—"as not to endanger persons or property" and "as to prevent the projectile from any such firearm from traversing any grounds or space outside the limits of such shooting gallery, grounds, or residence"—the statute does not limit the purposes for such a discharge. Thus, the discharge of firearms on private grounds

could include hunting. *See Comcast of California/Colorado, L.L.C. v. Express Concrete, Inc.*, 196 P.3d 269, 273 (Colo.App.2007) (when interpreting a statute, a court cannot ignore its existing language).

Second, section 30–15–302 does not restrict firearm hunting. Had the legislature intended to ban all firearm hunting, despite allowing firearm discharge on private grounds or residence, it could easily have said so. *See State Farm Mut. Auto. Ins. Co. v. Stein*, 924 P.2d 1154, 1158 (Colo.App.1996), *aff'd*, 940 P.2d 384 (Colo.1997). Thus, plaintiffs' proposed construction would require that we read words into the statute, which we may not do. *Turbyne v. People*, 151 P.3d 563, 567–68 (Colo.2007).

■ Third, section 30–15–302 does not refer to, much less limit, the Division's broad regulatory power set forth in other statutes, as discussed above. Yet, plaintiffs' interpretation of section 30–15–302 would do so. Statutes should be construed harmoniously to avoid conflict. *City of Florence v. Pepper*, 145 P.3d 654, 657 (Colo.2006). Implying that one statute restricts another is disfavored. *Id.*

We are unpersuaded by plaintiffs' argument that because the state is not liable for damage done to property by wild animals in these restricted areas, *see* § 30–15–302(2) ("The provisions of article 3 of title 33 ... shall not apply to any area designated by a board of county commissioners"), section 30–15–302(1) impliedly bans firearm hunting. Other sections within article 3 of title 33 release the state from liability for damage caused by wildlife under a variety of circumstances, including if a claimant "charges a fee in excess of five hundred dollars per person" for big game hunting, or "unreasonably restricted hunting on land under his control." § 33–3–103(1)(g), C.R.S.2009. Thus, the state can be released from liability although firearm hunting still occurs.

We also reject plaintiffs' argument that interpreting section 30–15–302 as anything less than a complete ban on firearm hunting would lead to an absurd result, because discharging the type of firearms used in big game hunting would inevitably "endanger persons or property" in an area such as

Sugar Loaf. The Division has offered scenarios under which such hunting, subject to specific restraints, would not necessarily endanger persons or property. Thus, we discern no absurdity. *See Dep't of Transp. v. City of Idaho Springs,* 192 P.3d 490, 494 (Colo.App.2008) (a court "will disregard unambiguous statutory language only when the resultant absurdity is 'so gross as to shock the general moral or common sense.'") (internal citations omitted).

Moreover, how the Division could limit hunting in an area restricted under section 30–15–302 raises factual questions, which as discussed in the following section, are best resolved by the Division, based on its expertise. *Colorado Dep't of Public Health & Environment,* 60 P.3d at 784. Judicial review of the dilemma that plaintiffs raise would be facilitated by the resulting administrative record. *Id.*

Accordingly, we conclude that section 30–15–302 does not ban all firearm hunting within designated county areas. Hence, we necessarily conclude that regulating hunting in Sugar Loaf is within the Division's expertise and discretion, and that the statute does not provide a basis to excuse any failure to exhaust administrative remedies available through the Division.

## VI. Available Administrative Remedies

■ We next reject plaintiffs' contention that exhaustion is excused because no adequate administrative procedures existed to consider their requested relief.[3]

Here, the relevant regulations, *see* Colorado Division of Wildlife Regulations §§ 000, 001 & 023, 2 Code Colo. Regs. 406–0, were adopted based on the Division's rulemaking authority, which is a quasi-legislative function delegated to it by the General Assembly. *See* § 33–1–104(1). Under section 24–4–103(7), C.R.S.2009, "[a]ny interested person shall have the right to petition for the issuance, amendment, or repeal of a rule." Thus, plaintiffs could have petitioned the Division to amend these regulations to comport with their view of the statutory restrictions on

firearms discharge applicable because of the County resolution. The denial of such a petition is subject to judicial review. *See* § 24–4–106(2), C.R.S.2009. And unlike the cases relied on by plaintiffs, *see, e.g., Collopy v. Wildlife Commission,* 625 P.2d 994, 1006 (Colo.1981) (declining to apply exhaustion of administrative remedies where case involved a constitutional question of law), here, we have concluded that plaintiffs' requested relief raised issues "committed to administrative discretion and expertise." *Id.*

Accordingly, because plaintiffs had an adequate administrative remedy available to challenge the Division's regulations allowing hunting in Sugar Loaf, we conclude that the provisions of section 30–15–302 do not excuse any failure to exhaust such remedies, and thus the trial court did not err in dismissing their complaint for lack of jurisdiction. *Egle v. City & County of Denver,* 93 P.3d 609, 613 (Colo.App.2004). Having so concluded, we need not separately address dismissal of the County.

The judgment is affirmed.

Judge TERRY concurs.

Judge CONNELLY specially concurs.

Judge CONNELLY specially concurring.

The district court dismissed this case based on plaintiffs' failure to exhaust administrative remedies. It did not reach the merits of their statutory claim that hunting is precluded in all areas closed by a county firearms resolution under section 30–15–302(1), C.R.S.2009.

For us to reach any substantive issue under the statute, we first would need to decide that the district court erred in requiring plaintiffs to exhaust their administrative remedies. *Hamilton v. City & County of Denver,* 176 Colo. 6, 12, 490 P.2d 1289, 1292 (1971) (only after holding that exhaustion was not required did court conclude it "may reach the substantive issues"). Otherwise, the merits are not properly before us. *See Escaler v. U.S. Citizenship & Immigration*

---

**3.** Plaintiffs did not argue that administrative review would have been futile. *See City & County of Denver v. United Air Lines, Inc.,* 8 P.3d 1206,

1213 (Colo.2000) (futility is an exception to the exhaustion requirement).

*Services,* 582 F.3d 288, 289 (2d Cir.2009) ("We affirm on the ground that appellant failed to exhaust his administrative remedies, and, therefore we cannot reach the merits."); 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 15:4, at 1001 (4th ed. 2002) (recognizing that logic suggests "a court may not decide the merits until it has first decided that exhaustion law allows it to decide the merits").

The majority agrees exhaustion is "the sole issue before us." But, while professing to express no opinion on the merits of plaintiffs' claims, it proceeds to conduct plenary review of the substantive statute on which those claims are based.

I would not conflate exhaustion and the merits. Though one commentator suggests "practical" reasons why courts' "preliminary impressions about the merits" may influence exhaustion decisions, *see* 2 Pierce, *supra,* § 15:4, at 1001, I am not persuaded such conflation is conducive to principled decision-making. Nor am I persuaded there is any practical benefit to conflation.

Confusion is spawned by conflating exhaustion and merits. The only issue actually decided by the majority is that the case was properly dismissed based on plaintiffs' failure to exhaust administrative remedies. That decision is arguably moot (because plaintiffs since exhausted) and not particularly significant.

There is significance to the legal effect of section 30–15–302(1), and much of the majority opinion interprets this statute. It does so, however, "only to resolve [the] exhaustion" issue. The opinion leaves unsettled what binding effect, if any, the majority intends its statutory discussion to have.

We should decide, without construing the substantive statute, whether plaintiffs are entitled to judicial resolution of the merits. There is an argument that exhaustion should not be required because plaintiffs' statutory claim raises a purely legal issue not committed to agency discretion. *See State v. Golden's Concrete Co.,* 962 P.2d 919, 923 (Colo. 1998). But plaintiffs' statutory claim is intertwined with heavily fact-dependent claims regarding the danger of hunting in this particu-

lar area. Because resolution of such claims would benefit from considered agency review, the district court did not err in requiring plaintiffs first to pursue available administrative remedies.

I accordingly concur in the decision affirming dismissal of the complaint on procedural grounds. I do so, however, without expressing any opinion on the merits of plaintiffs' claims.