23CA2191 Peo v McKain 05-29-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2191
El Paso County District Court No. 22CR5894
Honorable Erin Sokol, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew McKain,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Amanda Bishop, Deputy State Public Defender, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1     Defendant, Mathhew McKain, appeals the district court's order awarding restitution to Lillie Graber, the victim in this case. We affirm.

## I.     Background

¶ 2     In 2023, a jury found McKain guilty of third degree assault and harassment of Graber. A division of this court affirmed McKain's convictions. *People v. McKain*, (Colo. App. No. 23CA1074, Feb. 13, 2025) (not published pursuant to C.A.R. 35(e)) (*McKain I*).

¶ 3     Following the November 2022 assault, Graber sought medical treatment for her injuries. The prosecution requested restitution for Graber's medical treatment, prompting the district court to hold a hearing on this request. The prosecution provided the court and McKain with an itemized electronic billing record for the treatment Graber received, which included, among other things, a tetanus shot and intravenous (IV) therapy.

¶ 4     At the restitution hearing, McKain objected to the cost of the tetanus shot and the IV therapy, asserting that his conduct wasn't the proximate cause of those procedures. Graber testified that her medical provider decided that (1) a tetanus shot was necessary because she sustained an open wound, and (2) the IV therapy was

1

necessary to give her fluids before she underwent a CT scan to check for any internal injuries. The court found Graber's testimony credible and awarded restitution in the amount of $15,742.36 — almost the exact amount that the electronic billing record reflected for Graber's medical treatment.

¶ 5     McKain now appeals. He contends that the court (1) violated Crim. P. 16 and his right to confrontation by not requiring the prosecution to disclose Graber's medical records during discovery; (2) erred by allowing Graber to testify at the restitution hearing despite her violation of an ongoing sequestration order; and (3) erred by awarding restitution for the tetanus shot and IV therapy because McKain didn't proximately cause either treatment and because the treatments weren't awardable categories of restitution. We disagree with these contentions and affirm.

## II.     Disclosure of Medical Records

### A.     Crim. P. 16

¶ 6     In *McKain I*, McKain contended, as he does here, that the district court violated Crim. P. 16 by not requiring the prosecution to obtain and disclose Graber's medical records. The *McKain I* division rejected his argument, explaining that the prosecution bore

2

no obligation to disclose Graber's medical records because they weren't within its possession or control. *McKain I,* slip op. at ¶¶ 69-70 (citing Crim. P. 16(I)(a)(1)(III)). Nor did the prosecution need to obtain Graber's medical records, the division determined, because it proved her injuries at trial through her testimony and by admitting photos depicting her injuries. *Id.* at ¶ 70.

¶ 7    We agree with the *McKain I* division and conclude that its reasoning applies equally to the sentencing phase when the court considers restitution.

¶ 8    McKain's argument turns on the district court's interpretation of a rule of criminal procedure. Our review is therefore de novo. *See People v. Dye*, 2024 CO 2, ¶ 34.

¶ 9    Crim. P. 16(I)(a)(1)(III) states that the prosecuting attorney shall make available to the defense any "reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons." But this obligation applies only if the materials are "within the possession or control of the prosecuting attorney." Crim. P. 16(I)(a)(1). Because the prosecution didn't possess or control Graber's medical records, it had no

3

obligation to disclose them either before trial or during the sentencing phase. *See McKain I*, slip op. at ¶ 70; *see also People In Interest of E.G.*, 2016 CO 19, ¶ 14 ("Crim. P. 16 ensures that a defendant has access to material and information in the government's possession or control, but it does not address a defendant's ability to access material and information held by private third parties.").

¶ 10     We aren't persuaded otherwise by McKain's argument that the prosecution was responsible for obtaining Graber's medical records from her medical provider. McKain points us to nothing in the record to suggest that the Graber's provider either "participated in the investigation" or "reported" to the prosecution about the case, either of which may have triggered the prosecution's obligation to seek Graber's medical records from the provider and disclose them to McKain. Crim. P. 16(I)(a)(3); *see People v. Grant*, 2021 COA 53, ¶ 30.

### B.     Confrontation

¶ 11     The *McKain I* division also considered and rejected McKain's contention, raised again here, that the district court violated his Confrontation Clause rights by not requiring the prosecution to

produce Graber's medical records. *McKain I*, slip op. at ¶¶ 78-82. The division explained that the right to confrontation is a trial right that doesn't extend to securing access to every possible source of relevant information in pretrial discovery. *Id.* at ¶ 79 (citing *People v. Spykstra*, 234 P.3d 662, 670 (Colo. 2010)).

¶ 12 We review a possible Confrontation Clause violation de novo. *People v. Hernandez*, 2021 CO 45, ¶ 18.

¶ 13 We agree with the *McKain I* division that a defendant's right to confrontation is a trial right. *McKain I*, slip op. at ¶ 79. Consistent with its holding and those from other divisions of this court, the right doesn't extend to sentencing when the court considers restitution. *See People v. Vasseur*, 2016 COA 107, ¶ 19 ("[T]he right of confrontation does not apply to restitution hearings because restitution is part of the sentencing proceeding.").

¶ 14 Accordingly, the district court didn't violate Crim. P. 16 or McKain's Confrontation Clause rights by not requiring the prosecution to produce Graber's medical records.

### III.   Sequestration Order

¶ 15 McKain next contends that the district court erred by allowing Graber to testify at the restitution hearing after she observed a

5

colloquy between the court and counsel at the beginning of the hearing. According to McKain, Graber's presence at the hearing before she testified violated an "ongoing" sequestration order and allowed her to tailor her later testimony to address a concern about causation that the court raised during its discussion with counsel. We disagree for two reasons.

¶ 16 First, we conclude that McKain waived this contention. Waiver is the intentional relinquishment of a known right or privilege. *People v. Rediger*, 2018 CO 32, ¶ 39. At the start of the restitution hearing, both the court and the prosecution acknowledged that Graber was present. Despite being made aware of her presence, defense counsel continued to engage in the colloquy with the court and the prosecutor. Defense counsel never requested that the court sequester Graber until she testified. As a result, McKain waived this contention. *See Forgette v. People*, 2023 CO 4, ¶ 34 (defendant waived objection to a sleeping juror when defense counsel was "fully aware of the sleeping juror but did not object or ask the court to take any action to address the issue"); *Rediger*, ¶ 40 (waiver "extinguishes" error and appellate review).

¶ 17    Second, even if McKain didn't waive the issue, the court's sequestration order wasn't "ongoing" as McKain asserts. At trial, the court mentioned multiple times that its sequestration order remained in effect only until the witness was released from their subpoena, if any. At the conclusion of Graber's testimony on the second day of trial, the court confirmed with counsel that she could be excused and wasn't under subpoena. The court never gave any indication that Graber remained under an "ongoing" sequestration order that continued beyond the trial and into the sentencing phase.

¶ 18    Accordingly, the court didn't err by permitting Graber to testify at the restitution hearing.

IV.    Proximate Cause and Restitution for Medical Procedures

¶ 19    McKain last contends that (1) he didn't proximately cause Graber's need for either the tetanus shot or IV therapy; and (2) the cost of those two procedures wasn't awardable as restitution because neither constituted a "medical test[]" or "treatment prescribed" under section 18-1.3-602(3)(a.5), C.R.S. 2024. We discern no basis to reverse.

¶ 20    A convicted defendant must generally pay full restitution to those harmed by their misconduct, including any pecuniary loss proximately caused by the defendant.  *See* §§ 18-1.3-601(1)(b), -602(3)(a), -603(1), C.R.S. 2024.  Proximate cause refers to any "cause which in natural and probable sequence produced the claimed injury."  *People v. Stewart*, 55 P.3d 107, 116 (Colo. 2002) (quoting CJI-Crim. 9:10, 9(3) (1983)).

¶ 21    We review for clear error the district court's determination that the defendant proximately caused the victim's losses.  *Martinez v. People*, 2024 CO 6M, ¶ 32.

¶ 22    In awarding restitution, the district court found that McKain proximately caused Graber's need for both the tetanus shot and the IV therapy.  The record supports this finding.  Graber testified that her medical provider decided that she "needed" a tetanus shot because she sustained an open wound from McKain's assault.  Graber explained she hadn't received a tetanus shot since 2016, six years earlier.  She also testified that she received fluids through the IV so that medical staff could insert the ink that was necessary to perform a CT scan to check for internal injuries.  According to

8

Graber, her medical provider informed her that she "could not get the CT scan without having the IV."

¶ 23    Based on Graber's testimony that both medical procedures were necessary to treat the injuries she sustained from McKain, we perceive no error, let alone clear error, in the district court's proximate cause determination. While McKain asserts that Graber's testimony contradicted the physical evidence introduced at trial, the district court found Graber credible. As an appellate court, we may not revisit issues of witness credibility or the weight of the evidence. *See People v. Rodriguez-Morelos*, 2022 COA 107M, ¶ 91 ("Because the [district] court acts as the fact finder during a restitution hearing, it has the authority 'to determine the weight of the evidence [and] the witnesses' credibility.'") (second alteration in original) (citation omitted).

¶ 24    Finally, we aren't persuaded by McKain's contention that the cost of Graber's tetanus shot and IV therapy weren't awardable under section 18-1.3-602(3)(a.5). Regardless of whether such procedures constituted "medical tests" or "treatment prescribed" under that subsection of the restitution statute, a different provision expressly authorized the court's award. Specifically,

section 18-1.3-602(3)(a) authorizes the court to award restitution for "*any* pecuniary loss suffered by a victim." (Emphasis added.); *see also Colo. State Bd. of Acct. v. Raisch*, 931 P.2d 498, 500 (Colo. App. 1996) ("The term 'any' is an inclusive term often used synonymously with the terms 'every' and 'all.'" (quoting Black's Law Dictionary 94 (rev. 6th ed. 1990))). Based on this expansive language, we discern no error in the court's decision awarding restitution for the cost of Graber's tetanus shot and IV therapy.

## V. Disposition

¶ 25 We affirm the restitution order.

JUDGE TOW and JUDGE YUN concur.